990 P.2d 1194

Tammie D. **BAILEY**, Ronald Bailey and on Behalf of Minor Children Chad Bailey, Tristan Bailey, Brianne Bailey, Petitioner(s)-Appellees,

v.

Anthony **SANCHEZ**, Respondent–Appellant.

No. 21758.

Intermediate Court of Appeals of Hawai'i.

Dec. 3, 1999.

Certiorari Denied Jan. 13, 2000.

314

Dwight C.H. Lum, Honolulu, on the briefs, for respondent-appellant.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Respondent–Appellant Anthony Sanchez (Anthony) appeals the July 14, 1998 Order Granting Petition for Injunction Against Harassment entered by the District Court of the First Circuit, enjoining him from threatening, physically harassing, telephoning or entering the residential or work premises of Petitioner–Appellee Tammie Bailey (Tammie) and her family. We affirm.

## I. The Facts

On June 30, 1998, Tammie filed a petition in the District Court of the First Circuit on behalf of herself and her family, husband Ronald Bailey (Ronald) and their minor children, for a temporary restraining order (TRO) and injunction under Hawai'i Revised Statutes (HRS) § 604–10.5 (1993 & Supp. 1998)[1] against Anthony, their next-door neighbor.

In her declaration in support of the petition, Tammie stated that a TRO and injunction were necessary because of threatening things Anthony had said and done to them.

Tammie D. Bailey, Ronald Bailey, on the briefs for petitioner(s)-appellees, pro se.

1. § 604–10.5. Power to enjoin and temporarily restrain harassment

    (a) For the purposes of this section:

"Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

"Harassment" means:

    (1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

    (2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual, and that serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

    (b) The district courts shall have power to enjoin or prohibit or temporarily restrain harassment.

    (c) Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.

    (d) A petition for relief from harassment shall be in writing and shall allege that a recent past act or acts of harassment may have occurred, or that threats of harassment make it probable that acts of harassment may be imminent; and shall be accompanied by an affidavit made under oath or statement made under penalty of perjury stating the specific facts and circumstances from which relief is sought.

    (e) Upon petition to a district court under this section, the court may temporarily restrain for a period of fifteen days, persons named in the petition from harassing the petitioner if the alleged harassment has caused the petitioner substantial emotional distress. The court may issue an ex parte temporary restraining order either in writing or orally, provided that oral orders shall be reduced to writing by the close of the next court day following oral issuance.

Tammie also alleged Anthony had asked his friends to harass them.

Tammie explained in her declaration that Anthony and his friends "party" in Anthony's garage all day and all night long. During these parties, she claimed, Anthony sold illegal drugs.

Tammie charged that Anthony threatened her and Ronald with a gun on March 17, 1998. According to Tammie's testimony at the July 14, 1998 hearing on the petition, her husband asked Anthony, "You guys going party all night again?" Anthony got upset, went into his house and returned with a gun. Anthony pointed the gun at Tammie and Ronald, but before the police arrived, Anthony ran into his house and hid the gun.

On another occasion, Robert Gonti (Gonti), Anthony's friend, accosted Tammie's six-year-old daughter. Gonti gestured towards his crotch and told the daughter, "Suck it." After this incident, Tammie called the police. While Tammie was talking to the police officer, she looked up at Anthony's window and saw Anthony pointing a gun at her. Tammie claimed that she and her sister-in-law could hear clicking noises coming from the gun.

Tammie testified that after Anthony was served with the TRO, he stopped his car in front of their house, looked at Tammie and accelerated away, tires squealing—what she called "burning out." He repeated this a second time before parking in his garage.

At the hearing, Ronald decided against having his children testify because they were frightened. Instead, he twice directed the court's attention to their frightened demeanor.

In response, Anthony denied ever threatening the Baileys with a gun, or using drugs. Although Anthony admitted he uses the cul-de-sac at the end of their street to turn his car around, he denied ever "burning out."

In addition, Anthony produced three witnesses. Anthony's mother and two of his friends testified that they never witnessed Anthony threaten the Baileys or use drugs at the house.

At the conclusion of the hearing, the district court rendered its decision:

(f) A hearing on the petition to enjoin harassment shall be held within fifteen days after it is filed. The parties named in the petition may file responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive such evidence as is relevant at the hearing, and may make independent inquiry.

If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

Any order issued under this subsection shall be served by regular mail upon the chief of police of each county.

(g) The court may grant the prevailing party in an action brought under this section, costs and fees, including attorney's fees.

(h) A knowing or intentional violation of a restraining order or injunction issued pursuant to this section is a misdemeanor. The court shall sentence a violator to appropriate counseling and shall sentence a person convicted under this section as follows:

(1) For a violation of an injunction or restraining order that occurs after a conviction for a violation of the same injunction or restraining order, a violator shall be sentenced to a mandatory minimum jail sentence of not less than forty-eight hours; and

(2) For any subsequent violation that occurs after a second conviction for violation of the same injunction or restraining order, the person shall be sentenced to a mandatory minimum jail sentence of not less than thirty days.

The court may suspend any jail sentence, except for the mandatory sentences under paragraphs (1) and (2), upon appropriate conditions, such as that the defendant remain alcohol and drug-free, conviction-free, or complete court-ordered assessments or counseling. The court may suspend the mandatory sentences under paragraphs (1) and (2) where the violation of the injunction or restraining order does not involve violence or the threat of violence. Nothing in this section shall be construed as limiting the discretion of the judge to impose additional sanctions authorized in sentencing for a misdemeanor offense.

(i) Nothing in this section shall be construed to prohibit constitutionally protected activity.

Based on the—based on the evidence in front of this Court, the Affidavit supporting the request by the Baileys of their—and also testimony from the defendant, this Court finds that the—that the Baileys has (sic) offered sufficient evidence for this Court to grant the request for a TRO. It's gonna' be for two years.

An Order Granting Petition for Injunction Against Harassment was issued at the hearing. For a period of two years, it prohibited Anthony from:

A. Contacting, threatening or physically harassing Petitioner(s) and/or any person(s) residing at Petitioner(s)' residence.

B. Telephoning the Petitioner(s).

C. Entering and/or visiting the premises, including yard and garage, of the Petitioner(s)' residence and/or place of the Petitioner(s)' employment.

## II. The Evidentiary Issues.

Anthony argues that, but for inadmissible evidence introduced by the Baileys at the hearing on the petition, substantial evidence to support the injunction was lacking.

■ Anthony refers to several instances of hearsay and incompetent or irrelevant evidence that the court allegedly considered in rendering its decision.

For example, Tammie stated in her declaration that Anthony ran into his house in order to hide his gun, and that her sister-in-law heard the clicking noise from Anthony's gun. Anthony also complains that Ronald's two references to the emotional state of the Bailey children during the hearing was improper.

Anthony failed, however, to timely object to and thus preserve these points of error for his appeal.

■ Generally, "[i]ssues not properly raised on appeal will be deemed to be waived." [2]

Accordingly, the Hawai'i Supreme Court has held that evidentiary objections, such as hearsay objections, not raised during trial will not be considered on appeal.[3]

■ Where, as in this case, a party is represented by counsel, "[i]t is clearly the obligation of counsel in any case to see to it that his [or her] objections to or grounds for action are made a part of the record." [4]

Anthony's attorney failed to raise any objections to the testimony at the hearing. In addition, defense counsel failed to object to Ronald's two requests that the court observe the children's demeanor. Finally, during argument to the court, defense counsel failed to raise any evidentiary objections or object to the contents of Tammie's declaration.

Even if we disregard, however, the evidence Anthony complains about, there was substantial evidence to support the granting of the injunction.

■ It was the prerogative of the district court to find that Tammie's testimony regarding the March 17, 1998 threat with the gun was credible.[5] This threat, in and of itself, is sufficient to constitute "a threat of imminent physical harm, bodily injury, or assault" pursuant to HRS § 604–10.5(a)(1). There was thus substantial evidence to support the injunction, and it cannot be said the district court's decision was clearly erroneous.[6]

2. *Hill v. Inouye*, 90 Hawai'i 76, 82, 976 P.2d 390, 396 (1998) (quoting *Pele Defense Fund v. Paty*, 73 Haw. 578, 613, 837 P.2d 1247, 1268 (1992), *cert. denied*, 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993)).

3. *MPM Hawaiian, Inc. v. Amigos, Inc.*, 63 Haw. 485, 487, 630 P.2d 1075, 1077 (1981).

4. *Kawamoto v. Yasutake*, 49 Haw. 42, 45, 410 P.2d 976, 977 (1966).

5. *Booth v. Booth*, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999).

6. Whether there was substantial evidence to support the TRO is reviewed under the "clearly erroneous" standard. "[A conclusion of law] that presents mixed questions of fact and law is

Since Anthony failed to timely object and thereby preserve the evidentiary issues for appeal, we are not obligated to consider those issues, raised for the first time on appeal. However, even without the allegedly objectionable evidence, there was substantial evidence to support the issuance of the injunction.

### III. The Constitutional Issues.

Anthony advances several points of error couched in constitutional terms.

■ Anthony's first such argument is that the lack of a state-of-mind requirement for the "[p]hysical harm, bodily injury, or assault, or the threat of imminent physical harm, bodily injury, or assault" form of harassment under HRS § 604–10.5(a)(1) is a violation of due process because it transforms the "offense" into a strict liability offense.

Anthony cites no authority for this position, and admits that we are dealing with a civil proceeding, but points to the criminal penalties imposed for violating a HRS § 604–10.5 TRO or injunction [7] as justification for his argument.

His argument founders, however, upon the shoal of HRS § 604–10.5(h), which provides that there can be no criminal conviction unless "[a] knowing or intentional violation of a restraining order or injunction" has occurred.

Anthony next argues a denial of equal protection.

■ He notes that the HRS § 604–10.5(a)(2) form of harassment contains an "intentional or knowing course of conduct" element, and argues that those enjoined for the so-called strict-liability harassment under HRS § 604–10.5(a)(1) are denied equal protection of the laws because of this disparity.

Those enjoined for the latter are not subject, however, to a suspect classification vis-a-vis those enjoined under the former.

■ A suspect classification exists only where a class of individuals has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." [8] HRS § 604–10.5(a)(1) respondents cannot claim such a magnitude of deprivation.

■ Once a suspect classification exists, the differential treatment is subject to strict scrutiny. Absent a suspect classification, however, the differential treatment need only rationally further a legitimate state interest, and we need only determine whether any reasonable justification can be found for the law, in order for the law to pass equal protection muster.[9]

Surely it does, because the legislature could reasonably omit a state-of-mind element in the more perilous case in which the conduct involved causes or imminently threatens actual physical harm, under HRS § 604–10.5(a)(1), but require an intentional or knowing course of conduct where mere alarm, disturbance or bother is the result, under HRS § 604–10.5(a)(2).

It is also noteworthy on the equal protection argument that HRS § 604–10.5(f) requires the district court to issue an injunction in HRS § 604–10.5(a)(2) cases ("shall en-

reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." *Booth*, 90 Hawai'i at 416, 978 P.2d at 854 (1999)(citing *Poe v. Hawai'i Labor Relations Board*, 87 Hawai'i 191, 195, 953 P.2d 569, 573 (1998) (internal quotations omitted)(quoting *Price v. Zoning Board of Appeals of City and County of Honolulu*, 77 Hawai'i 168, 172, 883 P.2d 629, 633 (1994)).

7. HRS § 604–10.5(h).

8. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

9. *Coyle v. Compton*, 85 Hawai'i 197, 204, 940 P.2d 404, 411 (App. 1997).

join"), whereas the district court has discretion whether to issue an injunction in contexts which may lack scienter, under HRS § 604–10.5(a)(1) ("may enjoin").

This nuanced approach to disparate situations appears to be a rational legislative response to a problem "that cannot be effectively controlled by criminal processes and penalties," but which imposes "seriously damaging effects on the [harassment] victim's life and well-being."[10] A reasonable justification for the differential treatment under the civil harassment statutory scheme plainly appears.

 Anthony's final constitutional complaint is that HRS § 604–10.5(a)(1) is unconstitutionally overbroad in that it sweeps so broadly that constitutionally protected conduct as well as protected conduct is included in its proscriptions.[11]

On this point Anthony argues that HRS § 604–10.5(a)(1) applies to all types of physical harm or threats of imminent physical harm without regard to context or circumstances, recognizing no defenses or justifications: "It applies to someone who was involved in a mutual affray, or was acting in self-defense."

Here Anthony seems to be again confusing criminal punishment with civil restraint. As previously discussed, the criminal punishment argument lacks merit. HRS § 604–10.5(a)(1) imposes no criminal liability.

Furthermore, if the penal code provides a reduced punishment (mutual affray) or a complete defense (justification) for certain conduct, HRS § 604–10.5 places no burden thereon. HRS § 604–10.5(i) provides that "[n]othing in this section shall be construed to prohibit constitutionally protected activity."

To the extent that Anthony is arguing that a person may not constitutionally be restrained from further contact with someone he has injured or threatened with imminent harm, he must contend with the Hawai'i Supreme Court's holding in *State v. Kameenui.*

In *Kameenui,* the supreme court dealt with the more intrusive case of removal of the defendant from his home for a twelve-hour period after physical abuse of a family or household member under HRS § 709–906.

In rejecting a challenge to that statute on the basis that it was constitutionally overbroad, the supreme court held that "[t]here is no constitutionally protected right to remain free in your home after physically harming someone residing there."[12]

It would appear this holding clearly disposes of Anthony's final argument, as the restraint Anthony suffered was far less intrusive than being barred from his own home.

Though nowhere expressed in Anthony's appeal, any challenge to HRS § 604–10.5(a)(1) that might be inferred therein based upon a violation of the right to freedom of movement under the Fifth Amendment to the United States Constitution and article I, section 5 of the Hawai'i State Constitution must also fail in the face of our holding in *Coyle v. Compton.*

In *Coyle,* we rejected such a challenge to an injunction granted under HRS § 586–5.5. With the exception of the "family or household member" context of HRS § 586–1, the predicate acts are identical under HRS § 586–5.5 and HRS § 604–10.5(a)(1), and the reasoning of *Coyle* can be applied to HRS § 604–10.5(a)(1) without exceptionable difference.[13]

## IV. Conclusion

Based on the foregoing, we affirm the July 14, 1998 Order Granting Petition for Injunction Against Harassment.

---

**10.** Sen. Stand. Comm. Rep. No. 493–86, in 1986 Senate Journal, at 1005.

**11.** *See State v. Kameenui,* 69 Haw. 620, 623, 753 P.2d 1250, 1252 (1988).

**12.** *Id.*

**13.** *Coyle,* 85 Hawai'i at 206–07, 940 P.2d at 413–14.