Electronically Filed
Intermediate Court of Appeals
CAAP-13-0004228
26-NOV-2014
09:11 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

KELLEE DUARTE Petitioner-Appellee, v.
BRYAN C. YOUNG, Respondent-Appellant

NO. CAAP-13-0004228

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL CASE NO. 1SS13-1-660)

NOVEMBER 26, 2014

NAKAMURA, C.J., FOLEY AND GINOZA, JJ.

OPINION OF THE COURT BY FOLEY, J.

Respondent-Appellant Bryan C. Young (**Young**) appeals from the September 20, 2013 "Injunction Against Harassment" (**Injunction**) entered in the District Court of the First Circuit, Honolulu Division[1] (**district court**).

On appeal, Young contends the district court erred in granting the July 3, 2013 "Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment" (**Petition**) of Petitioner-Appellee Kellee Duarte (**Duarte**). Young argues the conduct upon which the district court relied in granting Duarte's petition (1) did not constitute a "course of

---

[1] The Honorable Paul B.K. Wong presided unless otherwise noted.

conduct" under Hawaii Revised Statute (**HRS**) § 604-10.5(a)(2) (Supp. 2013) and (2) was not an "threat of imminent physical harm, bodily injury, or assault" under HRS § 604-10.5(a)(1).

## I. BACKGROUND

Duarte and Young are neighbors who live "right next door" to each other. Duarte lives with her boyfriend, Kimo Woelfel (**Woelfel**), and her daughters (collectively, **Duarte Family**). Young lives with his parents, grandmother, girlfriend, and son (collectively, **Young Family**).

On July 3, 2013, Duarte filed her Petition for harassment pursuant to HRS § 604-10.5,[2] in which she requested a

---

[2] HRS § 604-10.5 provides in part:

**§ 604-10.5. Power to enjoin and temporarily restrain harassment.** (a) For the purposes of this section:

"Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

"Harassment" means:

(1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

(2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

(b) The district courts shall have the power to enjoin, prohibit, or temporarily restrain harassment.

(c) Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.

(d) A petition for relief from harassment shall be in writing and shall allege that a past act or acts of harassment may have occurred or that threats of harassment make it probable that acts of harassment may be imminent; and shall be accompanied by an affidavit made under oath or statement made under penalty of perjury stating the specific facts and circumstances for which relief is sought.

. . . .

(f) Upon petition to a district court under this section, the court may temporarily restrain the person or persons named in the petition from harassing the petitioner

(continued...)

temporary restraining order (**TRO**) and an order of injunction against Young.

Duarte's declaration in support of her Petition accuses Young of "[d]rinking, yelling, swearing, obnoxious behavior, loud music and threat[ening] those who would call the Police regarding late night parties held with underage drinking until 3 or 4am in the morning." Duarte included detailed descriptions of multiple verbal altercations that she had with Young between November 11, 2010 and June 30, 2013. Duarte claimed that if she did not obtain a TRO again Young "great harm will occur to [her] pets, [her] family, and [their] property."

Based on Duarte's Petition, the district court found probable cause to believe that "[r]ecent or past acts of harassment by [Young] have occurred" and "[t]hreats of harassment by [Young] make it probable that the acts of harassment may be imminent against [Duarte]." A TRO against Young was subsequently

---

[2](...continued)
upon a determination that there is probable cause to believe that a past act or acts of harassment have occurred or that a threat or threats of harassment may be imminent. The court may issue an ex parte temporary restraining order either in writing or orally; provided that oral orders shall be reduced to writing by the close of the next court day following oral issuance.

(g) A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted. A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted. If service of the temporary restraining order has not been effected before the date of the hearing on the petition to enjoin, the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.

The parties named in the petition may file or give oral responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive all evidence that is relevant at the hearing and may make independent inquiry.

If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

entered.

On July 12, 2013, Young's parents filed a petition for an injunction pursuant to HRS § 604-10.5 against Woelfel.[3] On July 26, 2013, the district court ordered the Young Family and Duarte Family to attend mediation,[4] but the families were unable to resolve their dispute. The district court then consolidated the two petitions for harassment for hearings on August 30, 2013 and September 20, 2013.

During the hearings, the district court acknowledged that "there's a lot of history between everyone" but determined that "most of it is not relevant . . . as to whether or not the petition should be granted or denied." Consequently, the district court limited Duarte's testimony to events that occurred in January 2011, December 30, 2012, and June 29, 2013. In addition, the district court limited the scope of Duarte's cross-examination of Young to events that occurred on December 30, 2012 and June 29, 2013.[5]

Although the parties disagree on the specific dates that incidents occurred, they generally agreed that the first altercation between the two families occurred in 2011 when Duarte approached Young to complain about the noise from Young's pet

---

[3]     The petition for an injunction against Woelfel was not included in the record on appeal and is not at issue in this appeal.

[4]     The Honorable Hilary Gangnes presided.

[5]     The district court limited the scope of Duarte's cross-examination of Young to incidents that occurred on June 29, 2013 even though Young answered questions about events that occurred on June 30, 2013 during direct. Furthermore, there was confusion as to what incidents occurred on June 29, 2013 and what incidents occurred on June 30, 2013. Duarte is the only witness to testify that an incident occurred on June 29, 2013, and it is unclear whether she was merely prompted by the court's question. The colloquy was as follows:

> THE COURT: Okay. Did you witness -- did you witness any exchange between [Woelfel] and the [Young Family] on June 29, 2013?

> MS. DUARTE: June 29, 2013. Okay. It was actually, um, the Saturday but -- different date but Saturday. Okay.

The discrepancy in dates is only relevant to the extent that the district court continued to limit Duarte's cross-examination of Young to June 29, 2013 and ultimately cited June 29, 2013 as the relevant date when orally granting Young's parents' petition against Woelfel.

roosters.[6] The next incident the district court found relevant occurred on or around December 30, 2013, in which Woelfel and Young became involved in a verbal altercation while Woelfel was cleaning his yard. Woelfel testified the altercation ended when Duarte intervened and told Woelfel, "You know, Babe, not worth it. Not worth it."

The last incident the district court found relevant to Duarte's Petition occurred on or around June 30, 2013. The June 30, 2013 incident started when Young's friend, Ryan Cabus (**Cabus**), parked his car "right up underneath" Duarte's truck in a location that was close to a fire hydrant. Duarte asked Cabus to move his car because she was going to the store and her truck, which is a standard, could roll back and damage his car. Duarte told him, "And you can't park in front of the hydrant anyway." When Cabus told Young about Duarte's request, Young became upset and yelled to Duarte, "You bitch. You don't work for the F'ing City and County. You don't own the roads. You can't tell him where to park." At some point thereafter, Young's mother came outside and Duarte told her, "your son's a loser. He – he's 21 and still lives with you." In response to Duarte's comment, Young testified he yelled to Duarte "Fuck you, Hawaiian Bitch." When asked why he said that statement, Young testified, "Um, I said that because she told everybody that we're losers 'cause we live at home with our parents and that I have -- like I'm a stupid Filipino and I think I'm tough with my Filipino friends." Woelfel testified that he witnessed Young's father "trying to hold [Young] back 'cause [Young] was getting crazy and all of that." Other witnesses testified that Young was "aggravated" and "amped up."

After hearing testimony from both parties, the district court orally granted Duarte's Petition and reasoned that

> based on the credible evidence and testimony presented to this court there is more than clear and convincing evidence to find that on June 30, 2013 Bryan Young yelled at Kellee Duarte "Fuck you, Hawaiian bitch." He did so with the

---

[6] Duarte testified that she believed the incident with the roosters occurred in April 2011. It appears from the transcript that the district court and all other witnesses believed the first incident with the roosters occurred around the month of January 2011.

intent to annoy and harass and insulted Kellee Duarte in a manner that caused Kellee Duarte to reasonably believe that Bryan Young intended to cause bodily injury to Kellee Duarte.

On September 20, 2013, the district court entered the Injunction against Young, which read in part:

**BASED ON THE CREDIBLE EVIDENCE**

The Court finds that there is more than clear and convincing evidence that on June 30, 2013, Bryan Young yelled to Kellee Duarte "Fuck You Hawaiian Bitch," and did so with the intent to annoy and insult Kellee Duarte in a manner that would cause Kelle [sic] Duarte to reasonably believe that Bryan Young intended to cause bodily injury to Kellee Duarte.

On October 19, 2013, Young filed a timely notice of appeal to this court.

## II.    STANDARD OF REVIEW

Whether there was substantial evidence to support an injunction against an alleged harasser is reviewed under the "clearly erroneous standard." Bailey v. Sanchez, 92 Hawai'i 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999). "A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Id. (brackets omitted) (quoting Booth v. Booth, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999)).

## III.   DISCUSSION

In support of its decision to enjoin Young, the district court determined that there was clear and convincing evidence that "on June 30, 2013, Bryan Young yelled to Kellee Duarte 'Fuck You Hawaiian Bitch,' and did so with the intent to annoy and insult Kellee Duarte in a manner that would cause Kellee Duarte to reasonably believe that Bryan Young intended to cause bodily injury to [her.]" Young contends the district court erred when it issued its injunction because a single act does not constitute a "course of conduct" under HRS § 604-10.5(a)(2) and his insult was not a "threat of imminent physical harm, bodily injury, or assault" under HRS § 604-10.5(a)(1). We conclude that the district court's findings were insufficient to support the entry of the injunction against Young.

6

**A. A single act does not constitute a "course of conduct" so as to meet the definition of harassment under HRS § 604-10.5(a)(2).**

The district court determined that a reasonable person would believe that Young intended to cause bodily injuries to Duarte based on the manner in which he said, "Fuck you Hawaiian Bitch." The issue before us is whether the district court erred when it determined that Young's single insulting act constituted harassment under HRS § 604-10.5(a).

HRS § 604-10.5(b) gives the district court the "power to enjoin, prohibit, or temporarily restrain harassment." Under HRS § 604-10.5(a), harassment is defined as follows:

> (1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or
>
> (2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual, and that serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

"Course of conduct" is further defined as "a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose." HRS § 604-10.5(a).

The legislative history of HRS § 604-10.5 provides insight into the type of harassment the legislature sought to control under different parts of the statute.[7] When enacted in 1986, HRS § 604-10.5, paragraph (2), included the definition of

---

[7] The Hawai'i Supreme Court has noted that:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature which is to be obtained primarily from the language contained in the statute itself. We must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute an ambiguity exists. If the statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute.

Kauai Springs, Inc. v. Planning Comm'n of Cnty. of Kauai, 133 Hawai'i 141, 163, 324 P.3d 951, 973 (2014) (quoting Franks v. City and Cnty. of Honolulu, 74 Haw. 328, 334-35, 843 P.2d 668, 671-72 (1993) (citations and internal quotation marks omitted)).

harassment that required a "course of conduct" that "seriously alarms or disturbs consistently or continually bothers" for the court to grant a civil injunction against harassment. 1986 Haw. Sess. Laws Act 69, § 1 at 70. According to the Senate Judiciary Committee, the purpose of HRS § 604-10.5 was "to prevent harassment that cannot be effectively controlled by criminal processes and penalties" and to adopt a "civil statute that can be used to interrupt systematic and continuous intimidation that stops short [of] assault or threats." S. Stand. Comm. Rep. No. 19-86, in 1986 Senate Journal, at 780.

This court has held that, based on the legislative history of paragraph (2), courts are mandated to restrain or enjoin "conduct that involves systematic and continuous intimidation that stops short of assault or threats" when such conduct occurs in a series of acts so to constitute a course of conduct. See Luat v. Cacho, 92 Hawai'i 330, 342, 991 P.2d 840, 852 (App. 1999). Under paragraph (2) alone, an injunction is not warranted when an individual experiences a single act of intimidating, alarming, disturbing, or bothersome behavior.

"It is fundamental in statutory construction that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." Kauai Springs, Inc., 133 Hawai'i at 163, 324 P.3d at 973 (citation and internal quotation marks omitted). When comparing the two civil definitions of harassment, it is clear the legislature did not intend paragraph (2) to apply to a single incident of intimidating or alarming behavior. Instead, the legislature believed the only time a single act should rise to the level of harassment is when the act involves physical conduct or the threat of physical conduct. In support of its decision to enact paragraph (1), the Senate Judicial Committee noted that:

> Under current law, the civil definition of harassment requires a course or pattern of conduct which seriously alarms or disturbs another and which consistently or continually bothers this person; however, the civil definition does not contain language that would make a single act of physical conduct or the threat thereof, harassment that can be civilly enjoined by the courts.
>
> The current definition precludes the court from granting civil petitions from relief from harassment when

only a single act of physical harm, bodily injury, assault,
or by the threat thereof has been committed.

S. Stand. Comm. Rep. No. 2617, in 1996 Senate Journal, at 1218.

Based on a plain reading of HRS § 604-10.5 and the statute's overall legislative history, it is clear that a single act – even if it disturbs, alarms, bothers, or intimidates an individual – does not constitute a series of acts so to meet the definition of "course of conduct."

Consistent with this interpretation, we hold that the single act of yelling, "Fuck you, Hawaiian Bitch" does not constitute a "course of conduct" so to meet the definition of harassment under paragraph (2). In general, "[i]t is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part." State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996). Although the record contains evidence that on June 30, 2013 Young engaged in a series of acts that would alarm, disturb, or bother an individual, the district court did not cite any of those other acts as the basis for granting the Petition. The only basis relied upon by the district court in granting Duarte's Petition was that "on June 30, 2013, [Young] yelled to [Duarte] 'Fuck you, Hawaiian Bitch.'" Yelling insults is certainly the type of conduct that the legislature intended to restrain under paragraph (2), but only when done in a series of acts so as to constitute a "course of conduct." See Luat, 92 Hawaiʻi at 342, 991 P.2d at 852. Therefore, the district court's findings did not support the issuance of the injunction under paragraph (2).

> **B. The insult to which the district court cited is not a "threat of imminent physical harm, bodily injury, or assault" so as to constitute harassment under HRS § 604-10.5(a)(1).**

The legislative history of paragraph (1) indicates the legislature did not intend an insult to constitute a "threat" so as to meet the definition of harassment under paragraph (1). In 1996, the legislature amended the civil definition of harassment under HRS § 604-10.5(a) "to include a single act of harassment, when it is committed by physical harm, bodily injury, assault, or

by the threat thereof." S. Stand. Comm. Rep. No. 2617, in 1996 Senate Journal, at 1218; 1996 Haw. Sess. Laws Act 245, at 549. As amended, the language of paragraph (1) states harassment also means "[p]hysical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault[.]" HRS § 604-10.5(a)(1).

HRS § 604-10.5 does not define what constitutes a "threat of imminent physical harm, bodily injury, or assault" under paragraph (1). This court may look to legal and lay dictionaries as extrinsic aids to determine its meaning. Black Law's Dictionary defines a "threat" as "[a] communicated intent to inflict harm or loss on another . . . ." Black's Law Dictionary 1708 (10th ed. 2014). "It is a generally accepted rule of statutory construction that unless it appears by the context or otherwise in the statute a different sense was intended, words are to be given their ordinarily accepted meaning." State v. Kwak, 80 Hawaiʻi 297, 301, 909 P.2d 1112, 1116 (1995) (citation, internal quotation marks, and brackets omitted). Nothing in the language, context, or underlying history of HRS § 604-10.5 implies a legislative intent to interpret the word "threat" in a manner inconsistent with its ordinary meaning. Therefore, a "threat of imminent physical harm, bodily injury, or assault" means that an alleged harasser's conduct expressly or impliedly communicates an intent to physically harm, cause bodily injury, or assault another person imminently. This is an objective test. See Bailey, 92 Hawaiʻi at 316, 990 P.2d at 1198 (holding that pointing a gun to an individual "is sufficient to constitute 'a threat of imminent physical harm, bodily injury, or assault' pursuant to HRS § 604-10.5(a)(1)"). Under this objective standard, we are required to determine whether a reasonable person would believe the conduct of Young communicated an intent to physically harm, cause bodily injury, or assault Duarte imminently so as to meet the definition of harassment under paragraph (1). See Luat, 92 Hawaiʻi at 343, 991 P.2d at 853 ("The reasonable person standard is an objective one . . . [and] is reviewed on appeal de novo.")

Here, the conduct to which the district court cited

does not indicate Young communicated such an intent. The district court determined that Young had a subjective intent to "annoy and insult," which the court believed communicated to Duarte an objective intent to "cause bodily injury" to her. While yelling "Fuck you, Hawaiian Bitch" is certainly insulting and the manner in which Young yelled the insult may be alarming, we hold that a reasonable person would not believe that such an insult alone communicates an intent to physically harm, cause bodily injury, or assault Duarte imminently. The district court did not reference any other facts or circumstances to support its ruling.

Under an objective standard, Young's insult did not expressly or impliedly communicate an intent to physically harm or assault Duarte. We hold that the district court's findings regarding Young's conduct fell short of being a "threat of imminent physical harm, bodily injury, or assault" and did not support the issuance of the injunction under paragraph (1).

## IV. CONCLUSION

Therefore, the September 20, 2013 "Injunction Against Harassment" entered in the District Court of the First Circuit, Honolulu Division is vacated, and this case is remanded for further proceedings consistent with this opinion.

On the briefs:

Emmanuel G. Guerrero
for Respondent-Appellant.

David A. Fanelli
for Petitioner-Appellee.

*Craig H. Nakamura*

*Daniel R. Foley*

*Lisa M. King*

11