**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000560
09-APR-2020
11:10 AM**

NO. CAAP-16-0000560

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

MICHELLE MONTGOMERY and on behalf of RYDER MONTGOMERY and
BRODY MONTGOMERY, Petitioners-Appellees, v.
VAN CORUM, Respondent-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(Civil Case No. 1SS16-1-0376)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Hiraoka, JJ.)

Respondent-Appellant Van Corum (Corum), appeals from the July 12, 2016 Injunction Against Harassment (Injunction) entered by the District Court of the First Circuit (District Court).[1]

On appeal, Corum asks that we vacate the Injunction, contending that the District Court erred when it determined that he had no legitimate purpose when he videotaped Petitioner-Appellee Michelle Montgomery (Montgomery) and her two minor sons.[2]

After reviewing his point on appeal, Corum's arguments,[3] the record on appeal, and relevant legal authorities, we resolve Corum's point of error as follows and affirm.

---

[1] The Honorable Melanie May presided.

[2] Montgomery brought the instant Petition for Injunction in her own behalf and on behalf of her minor sons, aged two and five.

[3] No Answering Brief was filed by Montgomery.

Montgomery and her extended family[4] have had a contentious relationship with Corum and his wife, Ann K. Corum. Both families have petitioned for injunctions against the other and, on at least one occasion, pursued criminal charges against a member of the other family. Most, if not all of the incidents described by testimony in the instant case, occurred on the grounds of the condominium apartment complex in which both families live. The Corums live next door to the senior Montgomerys. Montgomery and her immediate family live in a separate unit on the other side of the complex.

In her Petition, brought under Hawaiʻi Revised Statutes (HRS) § 604-10.5 (2012),[5] Montgomery alleged, among other things,

---

[4]     Montgomery and her husband, Sam James Montgomery, have two sons, on whose behalf Montgomery filed her April 19, 2016 Petition for Ex Parte Temporary Restraining Order and For Injunction Against Harassment (Petition). They live in a separate unit in the same apartment complex as her in-laws, Sam Webster Montgomery and Linda Montgomery.

[5]     HRS § 604-10.5 (2012) gives the district courts of this state, the power to enjoin and temporarily restrain harassment. It states, in relevant part, (emphasis added):

> § 604-10.5 **Power to enjoin and temporarily restrain harassment.** (a) For the purposes of this section:
>
> "Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.
>
> "Harassment" means:
>
> (1)     Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or
>
> (2)     An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.
>
> (b)     The district courts shall have the power to enjoin, prohibit, or temporarily restrain harassment.
>
> (c)     Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.
>
> . . . .

(continued...)

2

that when she delivered her sons or shopping purchases from her car to her in-law's apartment, Corum would exit his apartment to videotape her activities. Montgomery alleged that Corum did not need to move his car, as he would not leave, making her and her sons fearful of his intentions. She also maintained that Corum would videotape her mother-in-law unloading groceries from her mother-in-law's car, parked in her own carport, to her own apartment. Montgomery alleged that, based on her belief Corum had conducted himself in a provocative, i.e., sexual, way and had weapons in his home, she was fearful of his intentions toward herself and her sons.

At the hearing on the Petition, Linda Montgomery testified that her grandchildren are dropped-off at her home almost every day, that Corum appears and videotapes "everybody" as this is being done, including Montgomery and her sons, and that she does not know why Corum does this.

Montgomery testified that she filed the Petition on behalf of herself and her children

---

[5](...continued)
> (g) A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted. A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted. If service of the temporary restraining order has not been effected before the date of the hearing on the petition to enjoin, the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.
>
> The parties named in the petition may file or give oral responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive all evidence that is relevant at the hearing and may make independent inquiry.
>
> If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.
>
> . . . .
>
> (j) Nothing in this section shall be construed to prohibit constitutionally protected activity.

>    [b]ecause [Corum has] been videotaping my kids, and I am fearful that he's going to do something to the kids and myself.  Oftentimes I can't -- I don't have an extra arm to protect myself or the kids when I'm carrying groceries to my mother-in-law's house or I'm carrying one of my kids who's sleeping or dropping them off.
>
>    He comes out and he's videotaping, and he keeps coming closer.  And there's nothing I can do because I'm carrying something in my arms.  And he just keeps coming closer and videotaping.  And I just -- I can't handle it anymore.  I'm scared.

Montgomery maintained that Corum is "constantly videotaping me or my kids . . ." for the past three years, he videotaped her when she is parked outside of her in-laws' home with her children, in the common areas when she was with her children, and while they were in front of her home, about a "football field" away from Corum's home.  Corum has videotaped her and her sons at their complex's pool.  She testified that he does not say anything when he is taping them.  She has told Corum to stop filming her, but Corum has continued.  She has also complained to the resident manager on multiple occasions about Corum's videotaping; she has never had to complain about any other resident's behavior.

Montgomery admitted that when she is parked in front of her in-laws' home unloading groceries or her children, she blocks access to Corum's carport "for a time being."  However, she also maintained that Corum has never asked her to move her car and the resident manager informed her that she is allowed to pull up and load and unload her car.

Montgomery also presented surveillance video of Corum walking up to her mother-in-law's vehicle as it was parked in a stall with its hatch open, and holding his phone and appearing to be taking photographs or video of the interior of the open hatch.  Corum stood so close to the open hatch that her mother-in-law brushed him away to close the hatch.  Corum testified that he was photographing or videoing to document she was "extending beyond her assigned parking place," but could not explain why he needed to approach her so closely to do so.

Vince Dydasco (Dydasco), the resident manager of the condominium, testified that the Corum and Montgomery families live on opposite sides of the condominium complex.  He testified

that he was familiar with Corum as the subject of three types of complaints by about a half-dozen of the residents. One group of complaints involved Corum walking around the complex, including the pool area, without a shirt, staring at but not speaking to anyone, then moving on. Another was about his video recording people, in addition to the Montgomerys, around the neighborhood, and the third involved him approaching kids while they were playing, lodged by the Montgomerys and others. He was also aware that Corum had been arrested because of Corum's possession of a firearm.

Dydasco testified that a resident may park in front of their unit to unload groceries or passengers, and there is no time limit on this, although he later stated that if it took a half-hour, it would be in violation of condominium rules. He acknowledged that Corum had complained to him that the Montgomerys block access to his parking stall, and they take a long time to load and unload their vehicles. However, he investigated these complaints and found that the Montgomerys are "well within their rights to unload and load. It's not excessive." Moreover, he has not found any basis to corroborate Corum's complaints about the Montgomerys and their use of the common area with their vehicles; the complex's board has issued a letter to Corum asking him to stop his video recording and harassing behavior of the Montgomerys.

Following the hearing, the District Court granted the Injunction, and stated:

> In one of these cases [Montgomery] seeks an injunction on her behalf and on behalf of her minor children against [Corum]. [Montgomery] testified that [Corum] is always videotaping. When asked how close [Corum] has approached, [Montgomery] gestured from her seat in the witness stand to the corner of the witness stand.
>
> [Montgomery] further testified that she has asked [Corum] not to videotape her and her children on numerous occasions. [Montgomery] further testified that despite her requests, [Corum] has continued to videotape her and her children.
>
> The court finds that [Montgomery] is credible and [] credits her testimony regarding the videotaping of [Montgomery and sons]. Based on her testimony and the reasonable inferences therefrom as well as on the recordings and exhibits that were admitted into evidence in this case, the court finds that [Montgomery] has proven by clear and convincing evidence that [Corum] has approached within five

feet of [older son] while holding a cell phone camera with the lens pointed in [older son's] direction on more than one occasion, that [Corum] has approached within five feet of [younger son] while holding a cell phone camera with the lens pointed in . . . [younger son's] direction on more than one occasion, and that [Corum] has approached within five feet of [Montgomery] while holding a cell phone camera with the lens pointed in [Montgomery's] direction on more than one occasion.

The court finds and concludes that [Corum's] actions of approaching [Montgomery and sons] while holding a cell phone camera with the lens pointed in [Montgomery and sons'] direction on more than one occasion constitute a knowing course of conduct directed at [Montgomery and sons] that seriously alarms, disturbs consistently, and continually bothers [Montgomery and sons].

The court further finds and concludes that these specific actions serve no legitimate purpose, and the evidence in this case does not support any finding or conclusion that [Corum] was videotaping [Montgomery and/or sons], Number 1, because he believed [Montgomery and/or sons] had committed a potential Association rule violation; and/or, 2, because he was fearful of a potential conflict with [Montgomery and/or sons]; and/or, 3, because he was trying to protect and/or defend himself against potential harassment by [Montgomery and sons].

The court further finds and concludes that [Corum's] course of conduct with respect to [Montgomery and sons] would cause a reasonable person to suffer emotional distress. Accordingly the court grants [Montgomery's] request for an injunction against [Corum] for three years.

Corum challenges the District Court's decision to issue the Injunction, disagreeing with the court's conclusion that he had no legitimate purpose for his actions, where the parties are hostile and the facts are in dispute, in light of his receipt of advice from the police to take pictures, that some of the videos have been used in court against Montgomery's husband, and that as applied in this case, was not contemplated by the legislature when creating this remedy.

Whether there was substantial evidence to support an injunction against an alleged harasser is reviewed under the "clearly erroneous standard." Bailey v. Sanchez, 92 Hawaiʻi 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999). "A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Id. (brackets omitted) (quoting Booth v. Booth, 90 Hawaiʻi 413, 416, 978 P.2d 851, 854 (1999)).

Duarte v. Young, 134 Hawaiʻi 459, 462, 342 P.3d 878, 881 (App. 2014). The District Court's finding that Corum had no legitimate purpose for his videotaping activity of Montgomery and

6

her sons was supported by the substantial, credible evidence presented at trial and was therefore not clearly erroneous.

The evidence presented was sufficient to establish that Corum had no legitimate basis to video record Montgomery and her sons. Montgomery's testimony, found credible by the District Court, established that Corum video recorded herself and her sons on numerous occasions in various locations in their shared apartment complex. Montgomery testified that Corum did not speak during the video recording, let alone ask that she move her vehicle. Although Corum had complained to the resident manager that Montgomery was parking in violation of the complex's bylaws, that accusation was not borne out by the board of directors' investigation, which was communicated to Corum. Moreover, after the board issued a letter to Corum's counsel asking Corum to stop his video recording of the Montgomerys, Corum continued his actions and indeed, maintained at trial he had a right to do so.

There was no attempt by Corum to resolve any of his complaints with the Montgomerys directly, thus undercutting his claim that his recording was to enforce the complex's bylaws. Moreover, his complaints, even with his videos, were not sustained by the complex's board and general advice from the police cannot serve to legitimize Corum's actions, regardless of the circumstances and methods used. In addition, the video recording of Montgomery's husband's actions does not establish a legitimate reason to record Montgomery and her sons. Finally, Corum's refusal to heed the warnings of the complex's board to stop his harassing video recording was clear notice to Corum that his recording activity was disapproved.

Based on the foregoing, the July 12, 2016 Injunction Against Harassment entered by the District Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, April 9, 2020.

On the briefs:

Anthony L. Wong
(Sumida Au & Wong)
for Respondent-Appellant.

/s/ Alexa D.M. Fujise
Presiding Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge