**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000546
25-MAY-2022
07:48 AM
Dkt. 56 MO**

NO. CAAP-20-0000546

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


SHARON SHIZUE NAKAMA, Petititoner-Appellee, v.
JORDAN RUSSELL, Respondent-Appellant

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CASE NO. 2DSS-20-0000148)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Wadsworth and Nakasone, JJ.)

Respondent-Appellant Jordan Russell (**Russell**) appeals from the Order Granting Petition for Injunction Against Harassment (**Injunction**), entered on August 10, 2020, in the District Court of the Second Circuit (**District Court**), Wailuku Division.[1] Following an evidentiary hearing, the District Court enjoined Russell, pursuant to Hawaii Revised Statutes (**HRS**) § 604-10.5 (2016),[2] from contacting, threatening, or harassing

---

[1] The Honorable Blaine J. Kobayashi presided.

[2] HRS § 604-10.5 provides, in relevant part:

**Power to enjoin and temporarily restrain harassment.**

(a) For the purposes of this section:

"Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

"Harassment" means:

. . . .

Petitioner-Appellee Sharon Shizue Nakama (**Nakama**) and entering or visiting her residence or workplace.

Russell raises a single point of error on appeal, contending that the District Court erred in finding by clear and convincing evidence that harassment occurred.

For the reasons discussed below, we affirm the Injunction.

## I.  Background

On June 5, 2020, Nakama filed a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment (**Petition**), pursuant to HRS § 604-10.5.  Nakama's attached declaration stated:  Russell was a former school classmate with whom Nakama had not spoken or had any contact since 2010.  On May 25, 2020, Russell began contacting Nakama via Snapchat and "[t]ext conversations over SMS."  Initial conversations were "normal" "'catching up' between classmates."  However, "[t]he contact escalated on [Russell's] behalf[,]" and "[h]e made [Nakama] feel unsafe by pushing [her] to hang out with him

---

    (2)    An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual, and that serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

    (b)  The district courts shall have the power to enjoin, prohibit, or temporarily restrain harassment.

    (c)  Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.

    . . . .

    (g)  . . . .

    . . . .

    If the court finds by clear and convincing evidence . . . that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

alone."  After receiving "[c]ondescending and [c]ontinuous [m]essages from Russell, Nakama "blocked him from Snapchat, phone, and texts[.]"  Nevertheless, on May 28, 2020, Russell "show[ed] up at [Nakama's] workplace uninvited."  The same day, Nakama sent Russell an outgoing text message stating, "Do not contact me[,]" and another message a minute later stating, "Never again."  Russell continued to send messages to Nakama, including one stating "I love you[,]" and continued to leave her voicemails.  Russell "[c]laimed in voicemails he loved [Nakama], was in love with [her], and that he could be someone to help [her] show [her] feminine side."  Russell also sent messages to Nakama's partner and to one of her friends.  Nakama stated in her declaration:  "I fear for my life from the ongoing calls, texts, and voicemails that are unwelcome[] from . . . Russell. . . .  I fear for my safety and wellbeing.  I also am concerned and fear for the safety of my coworkers, family, and those I have mentioned in my text messages."

At an evidentiary hearing on August 10, 2020, Nakama testified that she was "standing by the truthfulness of all of the statements . . . that [she] made in [the P]etition . . . ."  She also testified about other unwelcome contacts by Russell after she filed the Petition, including two voicemails on June 7 and nine voicemails on June 8, 2020.  Nakama played several of the voicemails in court without objection.  Nakama stated that she was "fearful for my safety and life" and explained that "[Russell] and I have no previous relationship except being classmates in school."

At the August 10, 2020 hearing, Russell testified that Respondent's Exhibit 1, a picture of his "Snapchat" application, showed that he had been "friends" with Nakama since June 10, 2020, "and in order for that to happen, you'd have to add me."  However, Nakama testified that she did not physically add Russell as a "friend" at that time.  She further stated:  "I don't know if it's an auto add being on Snaphat, but after that I had deleted my Snapchat."

Following the presentation of evidence and closing argument by Russell's counsel, the District Court stated:

THE COURT: . . . [T]he Court has listened to the testimony of [Nakama] and [Nakama]'s witness. The Court has also listened to the testimony of [Russell].

. . . [T]he Court has also had the opportunity to review the petition for temporary restraining order, ah, that was attached to, um, [Nakama]'s, ah, petition that was filed on June 5th.

. . . Mr. Russell, you know, contrary to what your attorney has argued to the Court this morning, . . . in the Court's opinion . . . I don't take this and say this lightly, but I think you have some serious problems here. Um, you have some serious psychiatric problems in the Court's opinion to be honest.

. . . [T]he frequency of your unwanted calls to [Nakama], the type of messages that you've left on her voicemail, the fact that you haven't listened to her repeated request to you to not have any contact with her, and then you actually even show up at her workplace with flowers and chocolate.

Um, that tells the Court that you somehow have not been able to understand and receive messages from somebody that's telling you that they don't want contact.

. . . I think that's probably the mistake that you're making in your life right now is you don't listen when people tell you things.

She doesn't want any contact with you, period. But yet you continue to call her.

And, you know, when I see things you call her on June 7, leaving voicemails. You call her again the following day. You leave multiple voicemails. Who does that? And who does that as a person that doesn't understand when somebody says that they don't want any form of contact with them?

So I -- I think you should get some help, Mr. Russell, for something that you obviously have not been able to grasp and understand.

And so the Court does find [Nakama] to be credible. [Nakama] has proven her claim or her -- her request for the injunction by clear and convincing evidence.

. . . [A]nd to a certain extent I agree with one portion of your attorney's argument saying that, you know, some of these messages in and of themselves are not threatening or harassing, but that's not what's happening in this case.

. . . [Nakama] has shown to the Court, um, incidents over a period of time that reflects to the Court a continuing course of conduct. And it's an intentional or knowing course of conduct that direct -- that's directed at her that does alarm and disturbs her and has no legitimate purpose. And any reasonable person in her position would be suffering from emotional distress.

And for those reasons the Court is granting the injunction in this case. The Court is granting the injunction for the maximum period allowed by law which is for a period of three years.

4

The District Court entered the Injunction the same day. This appeal followed.

## II. Standards of Proof and Review

The District Court issued the Injunction based on the conclusions that Russell intentionally engaged in a course of conduct directed at Nakama that alarmed and disturbed her and had no legitimate purpose, causing a reasonable person in her position to suffer emotional distress, *i.e.*, that Russell engaged in "harassment" as defined by HRS § 604-10.5(a)(2). HRS § 604-10.5(g) requires that the clear and convincing standard of proof be applied in determining whether conduct rises to the level of "harassment." "Clear and convincing evidence" is:

> an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable.

In re JK, 149 Hawaiʻi 400, 409, 491 P.3d 1179, 1188 (App. 2021) (quoting Masaki v. Gen. Motors Corp., 71 Haw. 1, 15, 780 P.2d 566, 574 (1989)).

"Whether there was substantial evidence to support an injunction against an alleged harasser is reviewed under the 'clearly erroneous standard.'" Duarte v. Young, 134 Hawaiʻi 459, 462, 342 P.3d 878, 881 (App. 2014) (citing Bailey v. Sanchez, 92 Hawaiʻi 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999)). "A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Id. (quoting Bailey, 92 Hawaiʻi at 316 n.6, 990 P.2d at 1198 n.6). We also have stated that "a trial court's determination as to whether a reasonable person would suffer emotional distress as a result of a course of conduct is reviewed on appeal de novo." Luat v. Cacho, 92 Hawaiʻi 330, 343, 991 P.2d 840, 853 (App. 1999) (citing State v. Trainor, 83 Hawaiʻi 250, 255, 925 P.2d 818, 823 (1996)).

5

We account for the clear and convincing standard of proof when addressing a claim that the evidence does not support the court's findings made under this standard, as follows:

> When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a *reasonable factfinder* could have found it *highly probable* that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.

JK, 149 Hawai'i at 409-10, 491 P.3d at 1188-89 (quoting Conservatorship of O.B., 470 P.3d 41, 55 (Cal. 2020)).

In applying this standard of review, we also recognize the following caution:

> [A]s in criminal appeals involving a challenge to the sufficiency of the evidence, an appellate court reviewing a finding made pursuant to the clear and convincing standard does not reweigh the evidence itself. In assessing how the evidence reasonably could have been evaluated by the trier of fact, an appellate court reviewing such a finding is to view the record in the light most favorable to the judgment below; it must indulge reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the factfinder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment. . . . [T]he question before a court reviewing a finding that a fact has been proved by clear and convincing evidence is not whether the appellate court itself regards the evidence as clear and convincing; it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof.

Id. at 410, 491 P.3d at 1189 (quoting O.B., 470 P.3d at 53).

### III. Discussion

Under HRS § 604-10.5, the district court "shall" grant an injunction prohibiting the respondent from harassing the petitioner "[i]f the court finds by clear and convincing evidence that" the respondent engaged in "[a]n intentional or knowing course of conduct directed at [the petitioner] that seriously alarm[ed] or disturb[ed] consistently or continually bother[ed] the [petitioner], and . . . serve[d] no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress." See Luat, 92 Hawai'i at

340-41, 991 P.2d at 850-51.  "[T]he type of harassment that the courts are mandated to restrain or enjoin under [HRS § 604-10.5(a)(2)] involves . . . systematic and continuous intimidation that stops short of assault or threats . . . ."  Id. at 342, 991 P.2d at 852.  "The reasonable person standard [to be applied under HRS § 604-10.5(a)(2)] is an objective one," under which the court must determine "whether 'a reasonable person, normally constituted,' would have suffered emotional distress as a result of a particular course of conduct."  Id. at 343, 991 P.2d at 853 (quoting Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 362, 944 P.2d 1279, 1305 (1997)).

Initially, Russell challenges the Injunction because "[t]he court's ruling was, in part, based on its own unsubstantiated psychiatric diagnosis."  His argument lacks merit.  Following the presentation of evidence, the District Court stated in part:  "Mr. Russell, . . . I don't take this and say this lightly, but I think you have some serious problems here.  Um, you have some serious psychiatric problems in the Court's opinion to be honest."  Viewing this statement in the context of the District Court's entire oral ruling, however, we conclude that the District Court did not base its decision to grant the Petition, in whole or in part, on this observation.  Rather, it appears that the District Court was attempting to emphasize the serious nature of Russell's conduct.  The court went on to discuss the evidence presented at the hearing, including "the frequency of [Russell's] unwanted calls to [Nakama], the type of messages that [Russell] left on her voicemail, the fact that [Russell] ha[d]n't listened to [Nakama's] repeated request to [Russell] to not have any contact with her," and that Russell then "show[ed] up at [Nakama's] workplace with flowers and chocolate."  Based on these findings, none of which Russell disputes, the court concluded that Russell had engaged in harassment.  On this record, we conclude that any error in characterizing Russell's conduct in psychiatric terms was harmless.  See Martin v. Kozuma, No. CAAP-18-0000702, 2020 WL 3542155, at *2 (Haw. App. June 30, 2020) (SDO) (concluding that any error in precluding certain questioning was harmless, where

"[t]here [was] no indication in the record that the District Court granted the [HRS § 604-10.5] Petition based on [respondent's] picture-taking").

Russell further contends that his conduct did not constitute "harassment" under HRS § 604-10.5(a)(2) for two reasons. First, he argues that "a reasonable person, normally constituted[,] would not have suffered emotional distress as a result of [Russell's] course of conduct." Relatedly, he asserts that "the messages Nakama identified as those that made her uncomfortable were innocuous and her reaction to them overblown." Second, Russell contends that his conduct "serve[d] the legitimate purpose of asking Nakama to go out with him."

Russell's argument focuses on the content of isolated statements made in individual text messages, while ignoring the District Court's reliance on other evidence in concluding that Nakama had established harassment by clear and convincing evidence. This evidence included the frequency of the unwanted calls to Nakama, the type of messages that Russell left on her voicemail, the fact that he did not listen to her requests for no contact, and the fact that Russell showed up at her workplace uninvited. The District Court also found that after Nakama had told Russell not to contact her again, Russell left multiple voicemails for her on June 7 and 8, 2020. These findings, none of which Russell challenges, are binding on this court. See State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019).

Based on these findings, the District Court concluded in part that Russell intentionally engaged in a course of conduct directed at Nakama, which alarmed and disturbed her. Based on our review of the record, we conclude that the District Court's findings were supported by substantial evidence from which a reasonable factfinder could have found it highly probable that such facts were true; the court's findings were thus not clearly erroneous. We further conclude that the District Court could reasonably have inferred that Russell's actions did not serve a legitimate purpose and would cause a reasonable person to suffer emotional distress. See Luat, 92 Hawaiʻi at 343, 991 P.2d at

8

853.  Both conclusions are supported by substantial evidence in the record and are not wrong.  Accordingly, the evidence was sufficient to support issuance of the Injunction.

For these reasons, the Order Granting Petition for Injunction Against Harassment, entered on August 10, 2020, in the District Court of the Second Circuit, Wailuku Division, is affirmed.

DATED:  Honolulu, Hawaiʻi, May 25, 2022.


On the brief:

Alen M. Kaneshiro,
for Defendant-Appellant.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge