<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000634
28-FEB-2022
07:50 AM
Dkt. 177 MO**</span>

NOS. CAAP-17-0000634 & CAAP-18-0000306

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


YUKO KAKAZU, Petitioner-Appellee, v.
PETER CHRISTOPHER, Respondent-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH HILO DIVISION
(CIVIL NO. 3SS17-1-0093)


MEMORANDUM OPINION
(By: Ginoza, C.J., and Wadsworth and Nakasone, JJ.)

These consolidated appeals arise from a June 7, 2017 Order Granting Petition for Injunction Against Harassment (**Injunction**), entered in favor of self-represented Petitioner-Appellee Yuko Kakazu (**Kakazu**) and against self-represented Respondent-Appellant Peter Christopher (**Christopher**) by the District Court of the Third Circuit, North and South Hilo Division (**District Court**).[1]  Following an evidentiary hearing, the District Court enjoined Christopher, pursuant to Hawaii Revised Statutes (**HRS**) § 604-10.5 (2016),[2] from contacting,

---

[1]    The Honorable Peter Bresciani presided.

[2]    HRS § 604-10.5 provides, in relevant part:

**Power to enjoin and temporarily restrain harassment.**
(a)  For the purposes of this section:

"Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

continue...

threatening or harassing Kakazu, entering or visiting her residence or places of employment, and attending certain dance events that Kakazu normally attended.

In appellate case no. CAAP-17-0000634, Christopher appeals from the Injunction, and also challenges the following orders entered by the District Court: (1) the August 2, 2017 Findings of Fact and Conclusions of Law (**FOFs/COLs**), as amended to correct clerical errors pursuant to an August 9, 2017 order; and (2) the August 3, 2017 "Order Denying [Christopher's] Motions for Reconsideration, etc. Dated June 14, 2017 and Additional Motion for Reconsideration Filed June 19, 2017" (**Order Denying Reconsideration**).

---

[2/] ...continue
"Harassment" means:

  (1)  Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

  (2)  An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

    (b)  The district courts shall have the power to enjoin, prohibit, or temporarily restrain harassment.

    (c)  Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.

    . . . .

    (g) . . . .

    . . . .

    If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

In appellate case no. CAAP-18-0000306, Christopher appeals from the following post-judgment orders[3] entered by the District Court: (1) the November 2, 2017 order denying Christopher's "Motion to Compel Accurate Answers to Discovery, Compel [Kakuzu's trial counsel ]Stephen [D. ]Strauss to Correct Errors Made on the Record, and Refer Matter to the Hawaii Office of Disciplinary Counsel" (**Order Denying Motion to Compel**)[4]; 2) the April 5, 2018 "Order Denying [Christopher's] Motion to Set Aside, and/or Modify, . . . and/or Vacate Orders, and/or For New Trial, and Other Relief Filed January 4, 2018" (**Order Denying Rule 60(b) Motion**); and (3) the April 5, 2018 "Order Granting . . . Kakazu's Request for Attorney's Fees and Costs" (**Order Granting Fees**).[5]

In appellate case no. CAAP-17-0000634, Christopher asserts twenty-six (26) points of error (**POEs**), contending that the District Court:

(1) erred in failing to properly apply the language of HRS § 604-10.5(a)(2) regarding an "intentional or knowing course of conduct";

(2) erred in issuing the Injunction pursuant to HRS § 604-10.5, because there was no showing that Christopher had violated, or imminently would violate, some other statute.

(3) erred in COL 6, by concluding that Christopher engaged in a "course of conduct directed at Kakazu[,]" which included activities that Christopher asserts were "constitutionally protected and . . . not directed at Ms. Kakazu";

(4) erred in failing to consider the harm to Christopher when the court issued the Injunction;

---

[3] Because the Injunction was a final, appealable order, it qualified as a "judgment" under Hawaiʻi District Court Rules of Civil Procedure (**DCRCP**) Rule 54(a). See infra note 13. We thus refer to subsequent motions filed by the parties, and subsequent orders filed by the District Court, as "post-judgment" motions and orders, respectively.

[4] The Honorable Darien W.L. Ching Nagata issued the Order Denying Motion to Compel.

[5] The Honorable Peter Bresciani issued the Order Denying Rule 60(b) Motion and the Order Granting Fees.

(5) erred in FOFs 7, 8, 10, 11, 12, 13, and 14, and COLs 6 and 10, by failing to account for "freedoms of speech and movement";

(6)-(11) erred in FOFs 3, 18, 21, 22, and 23;

(12) erred in COLs 6(h), 11, and 14, which Christopher asserts were not supported by the evidence;

(13) erred in interpreting HRS § 604-10.5 without reference to the First, Ninth, and Tenth Amendments of the U.S. Constitution and Sections 1.2, 1.3, 1.4, 1.5, 1.10, and 1.12 of the Hawaiʻi Constitution;

(14) erred in issuing an unnecessarily broad injunction;

(15) abused its discretion by denying Christopher's request to allow witness Punky McLemore (**McLemore**) to testify by telephone at the June 7, 2017 injunction hearing;

(16) abused its discretion by not allowing the testimony of McLemore and other witnesses at the July 7, 2017 hearing on Christopher's motion for reconsideration, filed on June 14, 2017, and additional motion for reconsideration, filed on June 19, 2017 (collectively, **motions for reconsideration**);

(17)-(18) erred in denying Christopher's motions for reconsideration;

(19) erred in dismissing the original petition for a restraining order without prejudice;

(20) erred in issuing *ex parte* restraining orders, when no violation of law or impending harm was shown;

(21)-(23) erred in denying Christopher's motions for reconsideration, when the "legitimate purpose" language of HRS § 604-10.5(a)(2) is unconstitutionally vague or the entire statute (HRS § 604-10.5) is unconstitutionally vague or broad;

(24) erred in failing to recognize that there were grounds for a new trial, when Kakazu's attorney made false claims in violation of the rules of professional conduct;

(25) erred in denying the motions for reconsideration due to ineffective assistance of Christopher's trial counsel; and

(26) erred in applying "a subjective . . . reasonable person standard" in issuing the Injunction;

4

In appellate case no. CAAP-18-0000306, Christopher asserts five additional points of error, contending that the District Court erred:

(1) in denying Christopher's DCRCP Rule 60(b) motion (**Rule 60(b) Motion**), filed on January 4, 2018;

(2) in refusing to modify the Injunction by removing specific public locations that Christopher was prohibited from attending;

(3) in granting Kakazu's request for attorney's fees and costs in defending against the Rule 60(b) Motion;

(4) when the Honorable M. Kanani Laubach declined to hear the DCRCP Rule 60(b) motion; and

(5) in denying Christopher's motion to compel answers to discovery and to refer the matter to the Office of Disciplinary Counsel (**Motion to Compel**), filed on November 2, 2017.

We group these contentions by subject matter and address each of them below. After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Christopher's contentions as follows:

**A.  Jurisdiction**

The Injunction was ordered effective as of June 7, 2017, for a period of three years "unless terminated or modified by appropriate order by [the District] Court." There is no indication in the record that the Injunction was extended. Christopher stated in a June 30, 2020 letter to this court that the Injunction "has now quietly expired after the passage of 3 years, [and] there remain important issues for this court to address[.]" The issue thus arises as to whether this appeal is moot. Because "mootness is an issue of subject matter jurisdiction," Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 4, 193 P.3d 839, 842 (2008), we must determine whether we have jurisdiction to decide the issues presented in this appeal before we reach the merits. See Pele Def. Fund v. Puna Geothermal Venture, 77 Hawaiʻi 64, 67, 881 P.2d 1210, 1213 (1994).

5

We conclude that the reputational harm that Christopher could reasonably suffer from an injunction issued under HRS § 604-10.5(g), based on findings and conclusions that Christopher engaged in harassment as defined in HRS § 604-10.5(a)(2), is sufficient to trigger the collateral consequences exception to the mootness doctrine. See Luat v. Cacho, 92 Hawaiʻi 330, 343, 991 P.2d 840, 853 (App. 1999) (recognizing that the clear and convincing proof standard applied under HRS § 604-10.5 "is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals" (quoting Masaki v. General Motors Corp., 71 Haw. 1, 15-16, 780 P.2d 566, 575 (1989)), and "reduces the risk to the alleged wrongdoer of having his or her reputation tarnished erroneously by increasing the plaintiff's burden of proof" (quoting Coyle v. Compton, 85 Hawaiʻi 197, 208, 940 P.2d 404, 415 (App. 1997))); cf. Hamilton, 119 Hawaiʻi at 9-10, 193 P.3d at 847-848 (adopting the collateral consequences exception to the mootness doctrine in a case involving a domestic violence temporary restraining order (**TRO**), where there was a reasonable possibility that issuance of the TRO would cause harm to the defendant father's reputation); In re JK, 149 Hawaiʻi 400, 405, 491 P.3d 1179, 1184 (App. 2021) (holding that "the reputational harm that could reasonably result from an order of involuntary hospitalization under HRS § 334-60.2 is sufficient to trigger the collateral consequences exception to the mootness doctrine"). We thus have jurisdiction to decide the merits of Christopher's appeal as to the issues he raises that implicate reasonably resulting reputational harm.

**B. Findings of Fact and Conclusions of Law**

The District Court issued the Injunction based upon the conclusions, among others, that "[Christopher] intentionally engaged in [a] . . . course of conduct directed at [Kakazu] after becoming aware that she was specifically not interested in him or had generally disengaged from the dating web site of eHarmony[,]" and that Christopher engaged in "harassment" as defined by HRS § 604-10.5(a)(2). HRS § 604-10.5(g) requires that the clear and convincing standard of proof be applied in

6

determining whether conduct rises to the level of "harassment," as defined in paragraph (a)(2). "Clear and convincing evidence" is:

> an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable.

JK, 149 Hawaiʻi at 409, 491 P.3d at 1188 (quoting Masaki, 71 Haw. at 15, 780 P.2d at 574).

"Whether there was substantial evidence to support an injunction against an alleged harasser is reviewed under the 'clearly erroneous standard.'" Duarte v. Young, 134 Hawaiʻi 459, 462, 342 P.3d 878, 881 (App. 2014) (citing Bailey v. Sanchez, 92 Hawaiʻi 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999)). "A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Id. (quoting Bailey, 92 Hawaiʻi at 316 n.6, 990 P.2d at 1198 n.6).

Where, as here, findings of fact require proof by clear and convincing evidence, we apply the clearly erroneous standard as follows:

> When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a *reasonable factfinder* could have found it *highly probable* that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.

JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89 (quoting Conservatorship of O.B., 470 P.3d 41, 55 (Cal. 2020)).

In applying this standard of review, we also take heed of the following caution:

> [A]s in criminal appeals involving a challenge to the sufficiency of the evidence, an appellate court reviewing a finding made pursuant to the clear and convincing standard

does not reweigh the evidence itself. In assessing how the evidence reasonably could have been evaluated by the trier of fact, an appellate court reviewing such a finding is to view the record in the light most favorable to the judgment below; it must indulge reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the factfinder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment. . . . [T]he question before a court reviewing a finding that a fact has been proved by clear and convincing evidence is not whether the appellate court itself regards the evidence as clear and convincing; it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof.

Id. at 410, 491 P.3d at 1189 (quoting Conservatorship of O.B., 470 P.3d at 53).

Thus, in this case, we review whether the evidence before the District Court, viewed in the light most favorable to Kakazu, could have led a reasonable fact-finder to find it was highly probable that the challenged FOFs (and mixed findings and conclusions) were true.

### 1. FOFs 3, 18, 21, 22, and 23

In POEs 6 through 11, Christopher contends that the District Court erred in FOFs 3, 18,[6] 21, 22, and 23.

**POE 6**: In POE 6, Christopher challenges FOF 3. FOF 3 states: "On or about October 7, 2016, [Christopher] sent a message to [Kakazu] through eHarmony. Because of the style and content of the message, [Kakazu] did not want to engage in communication with [Christopher] and she blocked him on the site." Christopher argues that the District Court erred in FOF 3 by finding that Kakazu did not want to communicate with Christopher. Christopher asserts that, based on the dating website's automated messages, he believed Kakazu wanted to continue communications.

At trial, however, Kakazu testified that she had blocked Christopher on eHarmony and Facebook and never communicated or wanted to communicate with him. Kakazu's testimony was sufficient to allow a reasonable factfinder to find the facts stated in FOF 3 highly probable, and we are not left

_____

[6] Christopher challenges only the third sentence of FOF 18: "As a result of the attention from [Christopher], [Kakazu] stopped dancing."

with a definite and firm conviction that a mistake has been committed.

**POE 7**:  In POE 7, Christopher challenges FOF 18.  FOF 18 states:  "Prior to October of 2016, [Kakazu] attended dances at the YWCA, the Elks Club, the Green Church and the Hon[o]kaʻa People's Theater.  Dancing is her major hobby and activity.  As a result of the attention from [Christopher], [Kakazu] stopped dancing."  Christopher argues that the District Court erred in finding that Kakazu stopped attending dance events because Christopher began showing up to the events.

At trial, however, Kakazu testified that she stopped attending dance events because she discovered that Christopher had begun attending the events.  Christopher himself testified that he received an email from Kakazu stating, "[p]lease don't come to any more tango dances in Hilo."  Christopher also testified that the last time he went tango dancing before October 2016 was in 1995.  The testimony of Kakazu and Christopher was sufficient to allow a reasonable factfinder to find the facts stated in FOF 18 highly probable, and we are not left with a definite and firm conviction that a mistake has been committed.

**POEs 8 and 9**:  In POEs 8 and 9, Christopher challenges FOF 21.  FOF 21 states:

> Although [Christopher] had contacted some of the dance groups in the Hilo area more than a year before October of 2016, he had not attended any dances.  The impetus that caused [Christopher] to actually attend a dance event in Hilo was his hope to meet [Kakazu] at one of the dance events.

Christopher argues that the District Court erred in finding that he did not attend any dances in Hilo before October 2016, and that the reason Christopher started to attend dance events in Hilo was to meet Kakazu.

At trial, Christopher confirmed that he had been dancing "other types of dances besides tango and ballroom" five years earlier.  However, Christopher also testified that before October 2016, the last time he went tango or ballroom dancing was in 1995, "give or take a couple of years."  Similarly, FOF 20, which Christopher has not challenged, provides:  "Prior to

October of 2016, [Christopher] had last danced Tango, Samba and Ballroom dancing in 1995.  He last danced Salsa in 2005."  See State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019) ("unchallenged findings of fact are 'binding upon this court'" (quoting Kelly v. 1250 Oceanside Partners, 111 Hawaiʻi 205, 227, 140 P.3d 985, 1007 (2006))).  Notably, Kakazu testified that her major hobby was dancing, "particularly tango[,] Argentine tango[,]" and, in context, it appears the District Court was referring to this type of dancing in FOF 21. Additionally, in a handwritten letter to Kakazu dated October 18, 2016, Christopher stated:

> Can you tell me how you discovered dancing & what you love about it?  Back in college, I took some basic lessons . . . and since then a few times – but not recently.  It will probably come back quickly – maybe one of these days I'll plan ahead and get out of my house, go to a dance in Hilo.  If I see you there, I hope you won't mind if I ask you to dance ‥

Thus, there was sufficient evidence to allow a reasonable factfinder to find the facts stated in FOF 21 highly probable, and we are not left with a definite and firm conviction that a mistake has been committed.

**POE 10**:  In POE 10, Christopher challenges FOF 22. FOF 22 states:  "Prior to October of 2016, [Christopher] last read something about astronomy in 1996."  Christopher argues that the District Court erred in FOF 22 in light of Christopher's purported testimony that "[his] family has been a member for four or five years at [ʻ]Imiloa [Astronomy Center][,]" he was invited to attend an event there on October 20, 2016, and he intended to go to the event with his daughter before he saw Kakazu's profile on eHarmony.

Christopher's assertions do not contradict FOF 22. Additionally, at trial, Christopher testified as follows:

> Q [by Kakazu's counsel].  Well when's the last time before you read Miss Kakazu's thesis dealing with astronomy that you read any other thesis dealing with astronomy before then?  Never happened; did it, Mr. Christopher?
>
> A.  I'm going to estimate 1996.

Accordingly, there was sufficient evidence to allow a reasonable factfinder to find the facts stated in FOF 22 highly probable, and we are not left with a definite and firm conviction that a mistake has been committed.

**POE 11**: In POE 11, Christopher challenges FOF 23. FOF 23 states:

> [Christopher] believed that [Kakazu] either block[ed] his profile or disabl[ed] her profile on eHarmony[.] Either of these activities were a clear indication that [Kakazu] did not want to have contact with [Christopher]. [Christopher] stated in his letter of October 11, 2016 that regardless of which was the correct alternative, he wished to pursue her. [Christopher] did not wait to see if [Kakazu] responded affirmatively to this new advance by the pre-address envelope she received before he sent off the packet of four additional letters/communications.

Christopher argues that the District Court erred in FOF 23 because at trial, the court stated that Christopher "should have taken a hint earlier that [Kakazu] wasn't interested[,]" which Christopher contends did not satisfy the clear and convincing evidence standard.

At trial, Kakazu testified that she was contacted by Christopher on eHarmony and blocked him. Christopher testified that when he attempted to contact Kakazu on the website, it showed that her profile was no longer available. Christopher then testified:

> I thought through the possibilities of what could explain this difference scenarios of what's going on here. And I had seen her profile recently and I thought that it was a courageous profile. And I had noticed when I -- when I read that profile that it seemed like somebody who I could get along with better than most of the people who I've seen profiles of on most dating sites that I've ever seen.
>
> And so one of the possibilities that occurred to me was that she had just joined the eHarmony service that had been quickly matched to me since I had never seen her in there before. And then when she got to the screen where it says she had to pay, she had decided she wanted to quit the service. And that seemed like one of the scenarios. And on the basis of that, I searched for her name, the name on the profile, Yuko. I don't recall the exact search I did but it was easy to find a few different references for her.

However, in a handwritten letter sent to Kakazu, Christopher stated, "eHarmony informed me you had also written me a message in response to mine, but didn't let me read it, as it says you've 'moved on' – apparently that means either [you] disabled your

profile or blocked mine. Either way, that's fine[.]" Although the District Court used a colloquial phrase at trial by stating that Christopher should have "taken a hint," there was sufficient evidence to allow a reasonable factfinder to find it highly probable that Christopher knew Kakazu either deactivated her account or blocked him, and that action was sufficient to indicate she did not want to have contact with Christopher. We are not left with a definite and firm conviction that a mistake has been committed in FOF 23.

In sum, Christopher challenges the above-identified FOFs primarily on the weight of the evidence, particularly his own testimony. However, as discussed above, we will not pass on the credibility of a witness or the weight of the evidence. See JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89. The District Court did not clearly err in FOFs 3, 18, 21, 22, or 23.

### 2.   COLs 6(h), 11, and 14

**POE 12**:   In POE 12, Christopher contends that the District Court erred in COLs 6(h), 11, and 14.

COLs 6(h), 11, and 14 state:

> 6.   The court finds by clear and convincing evidence that [Christopher] intentionally engaged in the following course of conduct directed at [Kakazu] after becoming aware that she was specifically not interested in him or had generally disengaged from the dating web site of eHarmony:
>
> . . . .
>
> h)   [Christopher] went dancing after an hiatus of at least ten years with the hope of meeting [Kakazu] and asking her to dance.
>
> . . . .
>
> 11.   [Christopher's] going dancing after an hiatus of at least ten years would further alarm a reasonable person because it evidenced the intent to seek out [Kakazu] in person and not just trying to initiate contact through letter and note.
>
> . . . .
>
> 14.   In order to permit [Kakazu] to attend her work functions and her normal social events without fear of encountering someone who has shown that he does not have an appropriate sense of boundaries with regards to her, by clear and convincing evidence, the Court finds it necessary to have [Christopher] stay away from the ʻImiloa Astronomy Center. Also because of

> the finding [Christopher] attended the dance event after an hiatus of ten to twenty years with the specific desire to meet [Kakazu], the Court finds it is necessary by clear and convincing evidence that [Christopher] not attend the dance events that [Kakazu] normally attends.

Christopher argues that the District Court erred in reaching these conclusions because FOF 21 was clearly erroneous.

COLs 6(h), 11, and 14 present mixed issues of fact and law and, as such, are reviewed under the clearly erroneous standard.[7]  See Duarte, 134 Hawaiʻi at 462, 342 P.3d at 881; JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89.  For the reasons discussed above, we have concluded there was sufficient evidence to allow a reasonable factfinder to find the facts stated in FOF 21 highly probable.  Based on the record, substantial evidence supports COLs 6(h), 11, and 14, and we are not left with a definite and firm conviction that a mistake has been committed.  Accordingly, we conclude that COLs 6(h), 11, and 14 are not clearly erroneous.

### 3.   FOFs 7, 8, 10, 11, 12, 13, and 14, and COLs 6 and 10

**POEs 3 and 5**:  In POEs 3 and 5, Christopher raises constitutional issues regarding the following FOFs and COLs:

FINDINGS OF FACTS:

. . . .

7.   On October 13, 2016, at her work place, [Kakazu] received a letter dated October 11, 2016 from [Christopher].  The letter starts out with the words, "Can we be friends? Maybe? OK that's a good start[.]" He indicated that he saw her profile on eHarmony[.] He indicated that eHarmony had informed him that she had written a message in response to his but that didn't let him read it meaning that she had either blocked his profile or disabled her profile.  He then writes that either way, it's fine because he prefers letters or meeting in person to endless online mazes.  He also thanks her "for. . . leaving me some crumbs how to write back.  Don't worry - you can trust me." At the end of this four page letter, he indicates that he has included a stamped pre-addressed envelope to make it easy for her to contact him with a yes, no or

---

     [7]    In particular, COL 11 presents mixed findings of fact, as well as a conclusion of law as to whether a reasonable person would suffer alarm as a result of the identified activity.  The conclusion of law is reviewed de novo. See infra Section B.4.

maybe. In a postscript to the letter, he wrote, "The picture with you and your grandmother is adorable."

8. [Kakazu] was shocked and frightened by this letter in that she had never communicated with [Christopher] and he had obtained her work address. She was also bothered by his assumption in the first lines of the letter that she might want to be friends with him.

. . . .

10. In the letter that appears to be dated October 14, 2016, he half seriously invites her to go to Kona with him and his children. He talks about his children, and his farm. The letter also contains the following:

> Can you tell me how you discovered dancing & what you love about it? Back in college, I took some basic lessons . . . and since then a few times – but not recently. It will probably come back quickly – maybe one these days I'll plan ahead and get out [of] my house, go to a dance in Hilo. If I see you there, I hope you won't mind if I ask you to dance :).
> Please forgive me if I ever repeat anything from a previous letter. I'm not going to keep copies of what I send you and I don't have a photographic memory.

11. In a note dated October 15, 2016, [Christopher] starts the note with the sentence[:] "On a small notepad I'll try to share the feeling of our adventure[.]" He then talks about his children. He finishes the note with the sentence: "The kids are eager now to water slide so early[. T]alk to you later."

12. In a four page letter dated October 17, 2016, [Christopher] indicates that his children love the water slides at the Hilton Hotel. [Christopher] states: "I have some good news! I went dancing & I can mostly remember how, PLUS I even found my dancing shoes.["] [Christopher] then states: "I hope you don't mind, I spied on your graduate thesis." He goes on to "confess" that he found and watched a television show about her. The program was apparently in Japanese, a language he does not speak. He invited her to go to the summit of Mauna Kea with his four children on his birthday, December 10th. He also wrote, "What I do know is that ever since I saw you[r] picture and name in eHarmony, I have felt something very special about you. I hope you will be open to getting to know each other some more. I want to hear more of your stories, dance across the floor with you, make up theories and salads together."

13. In a card dated October 18, 2016, [Christopher] invited [Kakazu] to a talk at the ʻImiloa Astronomy Center and dinner first. The card was signed "Affectionately yours Peter."

14. [Kakazu] was further[] disturbed by the receipt of the four letter/communication packet and was particularly disturbed because he had started dancing which was one of her activities; he stated he spied on her graduate thesis; was writing about his children and divorce and invited her to a birthday trip for him for his birthday to the summit of Mauna Kea.

. . . .

CONCLUSIONS OF LAW:

. . . .

6. The court finds by clear and convincing evidence that [Christopher] intentionally engaged in the following course of conduct directed at [Kakazu] after becoming aware that she was specifically not interested in him or had generally disengaged from the dating web site of eHarmony:

   a. He used the internet to find her full name and work address;

   b. He attempted to contact her on Facebook;

   c. After not receiving a reply from Facebook, he wrote her the October 11, 2016 letter;

   d. He did not wait to see if she responded positively to his October[ 11, 2016 letter.] He wrote her the October 14, 2016 letter;

   e. He wrote her the October 15, 2016 letter[;]

   f. He researched/spied on her graduate thesis and told her he did so in his October 17, 2016 letter[;]

   g. He confessed that he researched and found a television program about her and told her he had done so[;]

   h. He went dancing after an hiatus of at least ten years with the hope of meeting her and asking her to dance[;]

   i. He wrote her the October 17, 2016 letter[;]

   j. He wrote he[r] an October 18, 2016 card[;]

   k. He sent her the October 14th, 15th, 17[th] and 18th letters/communications to her in one packet.

. . . .

10. [Christopher's] four letter packet would have further alarmed any reasonable person because of the excessive person[al] detail and the fact that he did not wait for a response from his October 1[1], 2016 letter.

(Original bracketed material omitted.)

In POE 3, Christopher contends that the District Court erred in COL 6, by concluding that Christopher engaged in a "course of conduct directed at Kakazu[,]" which included activities that Christopher asserts were "constitutionally protected and . . . not directed at Ms. Kakazu." In POE 5, Christopher contends that the District Court erred in FOFs 7, 8,

15

10, 11, 12, 13, and 14, and COLs 6 and 10, "by considering the content of [Christopher's] communications to Ms. Kakazu beyond testing them for exceptions to freedoms of speech and movement[.]"

These constitutional arguments were not raised at trial or otherwise preserved for appeal. "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." County of Hawaiʻi v. C & J Coupe Family Ltd. P'ship, 119 Hawaiʻi 352, 373, 198 P.3d 615, 636 (2008) (quoting State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003)); see Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(iii).

In POE 3, Christopher asserts that his contention "was raised indirectly by [Christopher's trial counsel] in shortened form by stating 'Well that wasn't the evidence' and by [Christopher] in [his] alternate proposed FOF/COL." (Record citations omitted.) However, in the portions of the record that Christopher cites, neither his trial counsel nor Christopher himself argued that the activities at issue, which were later listed by the court in COL 6, were constitutionally protected.

In POE 5, Christopher concedes that "[t]his First Amendment claim was not raised below aside from one reference in my additional motion for reconsideration . . . ." However, that brief reference, improperly raised for the first time in a motion for reconsideration, was general, and did not mention any of the communications that are the subject of Christopher's appeal. Additionally, Christopher fails to raise a discernible argument regarding POE 5. See C & J Coupe Family, 119 Hawaiʻi at 373, 198 P.3d at 636.

For these reasons, POE 3 and POE 5, which challenge FOFs 7, 8, 10, 11, 12, 13, and 14, and COLs 6 and 10, are deemed waived.[8] See id.

---

[8] To the extent that Christopher is making a factual argument that the actions listed in COL 6 "were not directed at Kakazu," we rule there was substantial evidence in the record supporting this conclusion, and it is not clearly erroneous.

16

   **4.**  **COLs Determining that Christopher's Course of Conduct Would Cause a Reasonable Person to Suffer Emotional Distress**

  **POE 26**: In POE 26, Christopher contends that the District Court erred in applying "a subjective, or incorrect, reasonable person standard" under which the court "incorrectly evaluat[ed] the severity of the alarm/distress required by statute[.]" Christopher summarily argues that "[a] reasonable person would not be seriously alarmed" by his conduct.

  "The reasonable person standard [to be applied under HRS § 604-10.5(a)(2)] is an objective one," under which the court must determine "whether 'a reasonable person, normally constituted,' would have suffered emotional distress as a result of a particular course of conduct." Luat, 92 Hawaiʻi at 343, 991 P.2d at 853 (quoting Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 362, 944 P.2d 1279, 1305 (1997)). "[A] trial court's determination regarding whether a reasonable person would suffer emotional distress as a result of a course of conduct is reviewed on appeal de novo." Id. (citing State v. Trainor, 83 Hawaiʻi 250, 255, 925 P.2d 818, 823 (1996)).

  Here, the District Court made the following COLs in determining that a reasonable person would have suffered emotional distress as a result of Christopher's course of conduct:

> 8. [Christopher's] action in circumventing the anonymity of eHarmony and attempting to make contact outside of the site via Facebook, alone would cause a reasonable person to be alarmed.
>
> 9. [Christopher's] action in writing [Kakazu] at her work after not getting a response from Facebook would cause heightened alarm for a reasonable person because [Christopher] had also learned her work place and his letter included excessive details about his life and his assumption that she might be interested in getting to know him.
>
> 10. [Christopher's] four letter packet would have further alarmed any reasonable person because of the excessive person detail and the fact that he did not wait for a response from his October 1[1], 2016 letter.
>
> 11. [Christopher's] going dancing after an hiatus of at least ten years would further alarm a reasonable person because it evidenced the intent to seek out [Kakazu] in person and not just trying to initiate contact through letter and note.

17

12.    The desire to meet a friend or potential dating partner is a legitimate purpose. The fact that [Christopher] attempted to engage [Kakazu] after he was aware that she had either blocked him or had withdrawn from the dating scene made his efforts without legitimate purpose and his activities was excessively intrusive and alarming to any reasonable person and would cause any reasonable person to suffer serious emotional distress.

We conclude that these COLs, none of which Christopher challenges in POE 26, applied the correct objective standard required under HRS § 604-10.5(a)(2), and that Christopher's course of conduct as specified by the District Court would have caused a reasonable person to suffer emotional distress. Christopher does not establish, and the record does not support his assertion, that the District Court applied a subjective standard in making this determination. See Maukele v. Casumpang, CAAP-12-0000120, 2014 WL 5470621, at *1 (Haw. App. Oct. 24, 2014). Accordingly, POE 26 is without merit.

## C. Ex Parte Restraining Orders

**POE 19**: In POE 19, Christopher contends that the District Court erred in dismissing Kakazu's "original [petition for] restraining order" without prejudice, and without considering the factors set forth in State v. Estencion, 63 Haw. 264, 269, 625 P.2d 1040, 1044 (1981).

Based on the record in this case, it appears that Kakazu filed a petition for ex parte temporary restraining order against Christopher in an earlier separate proceeding, Kakazu v. Christopher, Civ. No. 3SS-17-1-000001 (**Case 1**); on January 5, 2017, the District Court issued a temporary restraining order against harassment in Case 1; on March 22, 2017, Kakazu filed a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment initiating the present case, Civ. No. 3SS-17-1-000093; and on March 29, 2017, Case 1 was dismissed without prejudice.

There is no indication in the record that Christopher appealed from any appealable order or judgment in Case 1. Accordingly, we lack jurisdiction to decide the issue he raises concerning the dismissal of Case 1.

18

**POE 20**:  Christopher contends that the District Court erred in issuing the "ex-parte restraining orders in the original and subsequent cases" because no impending harm existed and no violation of law occurred.

Because there is no indication in the record that Christopher appealed from any appealable order or judgment in Case 1 (see supra), we lack jurisdiction to decide the issue he raises concerning the temporary restraining order in Case 1.

As to the present case, Christopher argues that to obtain a temporary restraining order, Kakazu was required to show "impending irreparable harm caused by an impending violation of statute."[9]  We conclude that this issue is moot.  The Temporary Restraining Order Against Harassment (**TRO-H**) that was entered on March 22, 2017, has long since expired, and Christopher has shown no reasonable possibility that issuance of the TRO-H by itself, based on the probable cause standard set forth in HRS § 604-10.5(f), would cause him reputational harm or any other collateral consequence sufficient to trigger an exception to the mootness doctrine.  See supra Section A.  We thus lack subject matter jurisdiction to decide this issue.

---

[9]      HRS § 604-10.5(f) and (g) provide, in relevant part:

(f)  Upon petition to a district court under this section, the court may temporarily restrain the person or persons named in the petition from harassing the petitioner upon a determination that there is probable cause to believe that a past act or acts of harassment have occurred or that a threat or threats of harassment may be imminent.  The court may issue an ex parte temporary restraining order either in writing or orally; provided that oral orders shall be reduced to writing by the close of the next court day following oral issuance.

(g)  A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted.  A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted.  If service of the temporary restraining order has not been effected before the date of the hearing on the petition to enjoin, the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.

## D.  Issuance of the Injunction

Christopher asserts that the District Court made several errors in issuing the Injunction.

**POE 1**:  In POE 1, Christopher contends that the District Court erred in not understanding and failing to properly apply the language of HRS § 604-10.5(a)(2) regarding an "intentional or knowing course of conduct."  Christopher appears to argue that under this language, Kakazu should have been required to prove that Christopher intended or knew that his actions would cause Kakazu to suffer emotional distress.

Christopher asserts that this issue was first raised in his June 14, 2017 motion for reconsideration and was "indirectly brought up by [his] counsel" in counsel's closing statement during the injunction hearing.  However, the record does not support Christopher's assertions, and POE 1 is deemed waived. See C & J Coupe Family, 119 Hawaiʻi at 373, 198 P.3d at 636.

**POE 2**:  In POE 2, Christopher contends that the District Court erred in issuing the Injunction pursuant to HRS § 604-10.5, because there was no showing that he had violated, or imminently would violate, "some provision of statutory or common law, and that there [was] a 'cognizable danger of recurrent violation.'"  More specifically, Christopher argues that HRS § 604-10.5 "was only intended to apply to already-criminal conduct or conduct that led to clear danger of an impending violation of statute (other than 604-10.5)."

Christopher concedes that this argument was not raised below, and POE 2 is therefore deemed waived.  See C & J Coupe Family, 119 Hawaiʻi at 373, 198 P.3d at 636.

**POE 4**:  In POE 4, Christopher contends that the District Court erred in failing to consider the harm to Christopher when the court issued the Injunction.  Christopher argues that this issue "was implicitly raised by [Christopher's trial counsel] in referencing Luat" (underscoring added) during counsel's closing argument.

However, Christopher did not raise this argument below. In the portion of the record that Christopher cites, his trial counsel merely addresses the clear and convincing standard of

proof under HRS § 604-10.5, and argues that an injunction issued under the statute may result in "severe personal consequences" for the individual enjoined. POE 4 is thus deemed waived.[10] See C & J Coupe Family, 119 Hawaiʻi at 373, 198 P.3d at 636.

**POE 13:** In POE 13, Christopher contends that the District Court erred in interpreting HRS § 604-10.5 without reference to the First, Ninth, and Tenth Amendments of the U.S. Constitution and Sections 1.2, 1.3, 1.4, 1.5, 1.10, and 1.12 of the Hawaiʻi Constitution. This issue was not raised below, and Christopher makes no discernible argument on appeal regarding POE 13. POE 13 is thus deemed waived. See C & J Coupe Family, 119 Hawaiʻi at 373, 198 P.3d at 636; HRAP 28(b)(7).

**POE 14:** In POE 14, Christopher contends that the District Court erred in issuing an "unnecessarily broad" Injunction, because it prohibited him from entering or visiting ʻImiloa Astronomy Center, Subaru Telescope Facility, and dance events at several venues, for a period of three years.

COLs 14 and 15 state:

> 14. In order to permit [Kakazu] to attend her work functions and her normal social events without fear of encountering someone who has shown that he does not have an appropriate sense of boundaries with regards to her, by clear and convincing evidence, the Court finds it necessary to have [Christopher] stay away from the ʻImiloa Astronomy Center. Also because of the finding [Christopher] attended the dance event after an hiatus of ten to twenty years with the specific desire to meet [Kakazu], the Court finds it is necessary by clear and convincing evidence that [Christopher] not attend the dance events that [Kakazu] normally attends.
>
> 15. The injunction against harassment as issued by the Court prohibits no more of [Christopher's] conduct than is necessary to prevent further harassment of [Kakazu].

Christopher does not challenge COLs 14 and 15, which present mixed issues of fact and law. These COLs are supported by, among others, FOFs 9, 10, 12, 13, 14, 17, 18, 20, and 21.

---

[10] Morever, in COL 15, the District Court concluded that "[t]he injunction against harassment as issued by the Court prohibits no more of [Christopher's] conduct than is necessary to prevent further harassment of [Kakazu]."

Christopher does not challenge FOFs 9, 17 and 20,[11/] and has waived his purported constitutional challenge to FOFs 10, 12, 13, and 14.  See supra.  These FOFs are thus binding on this court.  See Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435.  In addition, we have determined that FOFs 18 and 21, among others, are supported by substantial evidence.  See supra.  POE 14 is thus without merit.

**POE 15**:  In POE 15, Christopher contends that the District Court abused its discretion in denying Christopher's March 8, 2017 non-hearing motion to permit witness McLemore to testify by telephone at the injunction hearing.  Christopher briefly argues that "[t]his testimony was relevant and should have been permitted by telephone."

"[T]rial courts have inherent judicial power to require a party to appear in person for a hearing."  State v. Salvas, No. CAAP-18-0000160, 2021 WL 1232051, at * 11 (Haw. App. Mar. 31, 2021) (mem. op.); see Stump v. Stump, No. CAAP-12-0001056, 2014 WL 1744081, at *7 (Haw. App. April 30, 2014) (mem. op.) (quoting State v. Sakamoto, 101 Hawaiʻi 409, 415, 70 P.3d 635, 641 (2003) (Acoba, J., concurring) (explaining that "courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them")).  Here, Christopher does not explain how McLemore's testimony was relevant or why she should have been permitted to testify by telephone.  In short, Christopher makes no discernible argument as to how the District Court abused its wide discretion to control the courtroom by denying the motion.  See HRAP Rule 28(b)(7).  POE 15 therefore lacks merit.

## E.  Motions for Reconsideration

The supreme court recently reiterated:

> [T]he purpose of a motion for reconsideration is to allow
> the parties to present new evidence and/or arguments that
> could not have been presented during the earlier adjudicated

---

[11/]    Further, Christopher does not dispute the first two sentences of FOF 18, which state:  "Prior to October of 2016, [Kakazu] attended dances at the YWCA, the Elks Club, the Green Church and the Hon[o]kaʻa People's Theater. Dancing is her major hobby and activity."

> motion. Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Gailliard v. Rawsthorne, 150 Hawaiʻi 169, 176, 498 P.3d 700, 707 (2021) (quoting Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 110, 58 P.3d 608, 621 (2002)). We review a "trial court's ruling on a motion for reconsideration under the abuse of discretion standard." Id. (ellipsis omitted) (quoting Wailea Elua, 100 Hawaiʻi at 110, 58 P.3d at 621). "An abuse of discretion occurs if the trial court has 'clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" Id. (quoting Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

**POE 16:** In POE 16, Christopher contends that the District Court abused its discretion by not allowing the testimony of McLemore and other witnesses at the July 7, 2017 hearing on Christopher's motions for reconsideration. Christopher summarily argues that the District court should have allowed the requested testimony "[f]or the same reasons mentioned in [POE] 15[.]"

The District Court appears to have denied Christopher's request because the testimony he sought to introduce at the July 7, 2017 hearing could have been presented during the June 7, 2017 injunction hearing. "Reconsideration is not a device . . . to raise arguments or evidence that could and should have been brought during the earlier proceeding." Gailliard, 150 Hawaiʻi at 176, 498 P.3d at 707 (quoting Wailea Elua, 100 Hawaiʻi at 110, 58 P.3d at 621). Christopher does not explain how the District Court abused its discretion in denying Christopher's request to present new testimony from McLemore and other, unidentified witnesses a month after the injunction hearing. He refers to "the same reasons mentioned in [POE] 15," but as stated above, Christopher does not explain how McLemore's testimony was relevant or why she should have been permitted to testify by telephone at the injunction hearing; nor does he make any discernible argument as to why reconsideration was warranted in these circumstances. See C & J Coupe Family, 119 Hawaiʻi at 373,

198 P.3d at 636; HRAP 28(b)(7). Thus, Christopher has failed to show that the District Court abused its discretion in denying Christopher's request, and POE 16 is without merit.

**POEs 17 and 18**: In POEs 17 and 18, Christopher contends that the District Court erred in denying the motions for reconsideration. Christopher summarily argues that "[c]onsistent with the importance that *true merits* have . . ., the lower court should have reconsidered and ruled as I requested . . . ."

Again, Christopher fails to make any discernible argument as to how the District court abused its discretion in denying the motions for reconsideration. See supra; C & J Coupe Family, 119 Hawaiʻi at 373, 198 P.3d at 636; HRAP 28(b)(7). POEs 17 and 18 are thus without merit.

**POEs 21, 22, and 23**: In POEs 21 through 23, Christopher contends that the "legitimate purpose" language of HRS § 604-10.5(a)(2) is unconstitutionally vague or the entire statute (HRS § 604-10.5) is unconstitutionally vague or broad. He asserts that these arguments were raised in the motions for reconsideration.

We first note that Christopher failed to comply with HRAP Rule 44, which states:

> It shall be the duty of a party who draws in question the constitutionality of any statute of the State of Hawaiʻi in any proceeding in any Hawaiʻi appellate court to which the State of Hawaiʻi, or any agency thereof, or any officer or employee thereof, as such officer or employee, is not a party, upon the filing of the record, or as soon thereafter as the question is raised in the appellate court, to give immediate notice in writing to the Attorney General of the State of Hawaiʻi of the existence of said question.

Moreover, it appears that Christopher first raised an abbreviated argument that HRS § 604-10.5 is unconstitutionally vague in his second motion for reconsideration, filed on June 19, 2017, twelve days after entry of the June 7, 2017 Injunction. The District Court described the motion as "untimely" and denied it. Christopher fails to make any discernible argument as to how the District court abused its discretion in denying the untimely motion for reconsideration. And even if the motion had been timely, Christopher does not explain why his constitutional argument could not have been presented at or before the

injunction hearing. See Gailliard, 150 Hawai'i at 176, 498 P.3d at 707. POEs 21, 22, and 23 are therefore without merit.[12/]

**POE 24**: Christopher contends that the District Court erred in failing to recognize there were grounds for a new trial, based on "false claims" made by Kakazu's counsel, "in violation of the rules of professional conduct[.]" Christopher appears to be referring to comments that Kakazu's counsel made and questions he asked during the injunction hearing, regarding an alleged violation of the restraining order in Case 1.

During the injunction hearing, Christopher did not object to or move to strike any of the comments, or object to any of the questions (save one on a different ground not at issue in this appeal), which he deems objectionable on appeal. The basis for appeal was therefore waived. See State v. Gonzalez, 128 Hawai'i 314, 317, 288 P.3d 788, 791 (2012) (noting that "the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal" (quoting State v. Kikuta, 125 Hawai'i 78, 89, 253 P.3d 639, 650 (2011))); Hawaii Rules of Evidence Rule 103(a)(1); see also State v. Alston, No. 28410, 2009 WL 868034, at *16 n.13 (Haw. App. Mar. 31, 2009) (mem. op.) ("As a general rule, objecting on a specific ground waives all other grounds for objection." (citing State v. Vliet, 91 Hawai'i 288, 299, 983 P.2d 189, 200 (1999))).

**POE 25**: Christopher contends that the District Court erred in denying the motions for reconsideration due to ineffective assistance of Christopher's trial counsel.

The right to effective assistance of counsel applies only in criminal proceedings. See Rocco v. Kalapana Seaview Estates Community Ass'n, No. CAAP-15-0000093, 2016 WL 197013, at *1 (Haw. App. Jan. 12, 2016) (citing Norton v. Admin. Dir. of Court, State of Hawai'i, 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995) ("The sixth amendment right to counsel applies only to criminal proceedings."); State v. Severino, 56 Haw. 378, 380, 537

---

[12/]  To the extent Christopher maintains that the District Court erred in issuing the Injunction because HRS § 604-10.5 is unconstitutionally vague or broad, he waived that argument by failing to make it at or before the injunction hearing. See C & J Coupe Family, 119 Hawai'i at 373, 198 P.3d at 636.

P.2d 1187, 1189 (1975) ("Under both the Hawaii State and Federal Constitutions, an accused has the right to assistance of counsel 'in all criminal prosecutions.'")).  Christopher cites no authority supporting his contention that an "exception" applies in this civil case.  POE 25 therefore lacks merit.

## F.  Rule 60(b) Motion

In appellate case no. CAAP-18-0000306, Christopher contends in part that the District Court erred in denying Christopher's post-judgment Rule 60(b) Motion.[13]

DCRCP Rule 60(b) provides in relevant part that a district court,

> may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore

---

[13]    DCRCP Rule 81(a) provides in relevant part that "[e]xcept as expressly otherwise provided by statute or rule of court, these rules shall not apply to:  . . . (4) Actions for relief from harassment maintained pursuant to HRS Section 604-10.5, as the same may be renumbered."  In turn, the Rules of the District Courts of the State of Hawaiʻi (**RDC**) Rule 31(a) states in relevant part:

> [W]here a civil proceeding is not governed by the [DCRCP]:
>
> . . . .
>
>     (3) Service of the petition and order to show cause and <u>any other</u> process or <u>order shall be made as provided by the [DCRCP]</u>;
>
> . . . .
>
>     (5) The court may designate and order that any one or more of the [DCRCP] shall be applicable in such case.

(Emphasis added.)

Here, Christopher invoked "Rule 60(b)" in the Rule 60(b) Motion. It appears that the District Court heard the motion as a DCRCP Rule 60(b) motion and denied it by order consistent with the requirements of DCRCP Rule 60(b).  See infra.  Accordingly, we analyze the motion as a DCRCP Rule 60(b) motion.  See Murasko v. Loo, 125 Hawaiʻi 39, 41-43, 252 P.3d 58, 60-62 (2011) ("The respondent judge, without expressly stating for the record, exercised her power under RDC Rule 31(a)(5) to apply the DCRCP when she approved the Curells' ex parte motion for an extension of time to file 'post-verdict motions' pursuant to '[DCRCP] Rules 59 and 60,' when she explained at the October 2, 2010 hearing that she had granted the Curells an extension of the ten-day deadline to file a postjudgment motion under DCRCP Rule 59, and when she granted the Curells' motion for new trial 'made pursuant to [DCRCP] Rule 59.'").

denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

We review the District Court's grant or denial of a DCRCP Rule 60(b) motion for an abuse of discretion. See Credit Assocs. of Maui, Ltd. v. Freitas, No. CAAP-13-0001182, 2017 WL 2303521, at *2 (Haw. App. May 26, 2017) (SDO); PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 327, 474 P.3d 264, 268 (2020) (construing substantially identical Hawaiʻi Rules of Civil Procedure Rule 60(b)).[14/]  "The trial court has a very large measure of discretion in passing upon motions under [DCRCP] Rule 60(b) and its order will not be set aside unless we are persuaded that under the circumstances of the particular case, the court's refusal to set aside its order was an abuse of discretion." PennyMac Corp., 148 Hawaiʻi at 327, 474 P.3d at 268 (original brackets omitted) (quoting Hawaiʻi Hous. Auth. v. Uyehara, 77 Hawaiʻi 144, 147, 883 P.2d 65, 68 (1994)).  "The burden of establishing abuse of discretion [in denying a DCRCP Rule 60(b) motion] is on the appellant, and a strong showing is required to establish it." Id. (quoting Ditto v. McCurdy, 103 Hawaiʻi 153, 162, 80 P.3d 974, 983 (2003)).

**CAAP-18-0000306, POEs 1 and 2**:  Christopher contends that the District Court erred in denying Christopher's Rule 60(b) motion, which he asserts was "based on the discovery fraud, and violations of HRPC [sic]" by Kakazu and her counsel.  Christopher argues that a post-judgment deposition and affidavit of Sandra Walker (**Walker**), both dated December 28, 2017, show that Kakazu "lied" about why she stopped attending dance events in Hilo.  In POE 2, Christopher contends, based on this new evidence, that the District Court erred in refusing to modify the Injunction to remove specific dance locations.  The District Court denied the Rule 60(b) motion, declining to hear Christopher's new evidence because it could have been, but was not, raised at trial.  The

_____

[14/]    "DCRCP Rule 60 can be interpreted by analogy to HRCP Rule 60." Malasek v. Nolen, No. 28007, 2010 WL 2355450, at *1 n.2 (Haw. App. June 9, 2010); see Casumpang v. ILWU, Local 142, 94 Hawaiʻi 330, 337, 13 P.3d 1235, 1242 (2000) (applying same standard of review to application of HRCP 12(b)(1) and DCRCP 12(b)(1) because the two rules are substantially identical).

27

District Court also rejected Christopher's request to remove certain dance locations from the Injunction.

Christopher has not made the required strong showing necessary to establish an abuse of discretion by the District Court in denying the Rule 60(b) motion.  See PennyMac Corp., 148 Hawaiʻi at 327, 474 P.3d at 268.  To the extent the motion can be construed as one for a new trial on the basis of newly-discovered evidence, Christopher has not shown that the evidence was previously undiscovered despite a purported exercise of due diligence.[15]  See Kawamata Farms, Inc., v. United Agri. Prods., 86 Hawaiʻi 214, 251, 948 P.2d 1055, 1092 (1997).  To the extent the motion can be construed as one for a new trial on the basis of fraud of an adverse party, Christopher has not "establish[ed] that the conduct complained of prevented [Christopher] from fully and fairly presenting his case or defense."  Id. at 252, 948 P.2d at 1093 (quoting Jones v. Aero/Chem Corp., 921 F.2d 875, 878-79 (9th Cir. 1990)).  Accordingly, we cannot conclude that the District Court abused its discretion in denying the Rule 60(b) motion or in rejecting Christopher's request to modify the Injunction.

**CAAP-18-0000306, POE 4:**  Christopher contends that the District Court erred when Judge Laubach declined to hear Christopher's Rule 60(b) motion.  During a February 7, 2018 hearing, Judge Laubach stated, in declining to hear the Rule 60(b) motion, "[T]he law is clear it has to be before the judge that heard the trial so which is, uh, Judge Bresciani."  The Rule 60(b) motion was subsequently heard by Judge Bresciani on March 7, 2018.

Christopher cites no Hawaiʻi case law or rule requiring Judge Laubach to have heard the Rule 60(b) motion, and we have found none.  Christopher also provides no reason that Judge Laubach should have heard the Rule 60(b) motion in these

---

[15]  It also appears that Christopher took post-judgment depositions in violation of the District Court's July 25, 2017 Order Denying Reconsideration, which, among other things:  (1) denied Christopher's "motion for taking of discovery in person and/or telephonically[,]" including Walker's deposition; and (2) denied without prejudice Christopher's oral motion "for an order allowing him to preserve evidence for appeal via depositions of alleged witnesses . . . ."

circumstances, even if she was permitted to do so. <u>Cf.</u> <u>Wong v. City & Cty. of Honolulu</u>, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) ("Unless *cogent reasons* support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion."); <u>Matsushita v. Container Home Supply, Inc.</u>, 6 Haw. App. 439, 443, 726 P.2d 273, 276 (1986) (applying <u>Wong</u> in Rule 60(b) context). We cannot conclude that Judge Laubach abused her discretion by declining to hear Christopher's Rule 60(b) motion in these circumstances.

## G.  **Award of Fees and Costs**

**CAAP-18-0000306, POE 3**:  Christopher contends that the District Court erred in awarding fees and costs to Kakazu in defending against the Rule 60(b) motion.  Christopher argues that the Order Granting Fees fails to satisfy the requirements of Hawaiʻi law.

On January 16, 2018, Kakazu filed a motion to strike and for sanctions regarding Christopher's January 4, 2018 Rule 60(b) Motion (**Motion for Sanctions**).  The Motion for Sanctions, which was brought pursuant to DCRCP Rule 11, sought an order striking the Rule 60(b) motion and imposing sanctions on Christopher for "his abuse of court processes, waste of party and judicial resources, and willful disregard of Court orders and District Court Rules."

On March 7, 2018, the District Court held a hearing on Christopher's Rule 60(b) Motion.  At the hearing, the District Court announced that it would deny Christopher's Rule 60(b) Motion and would award Kakazu the attorney's fees and costs that she incurred in defending against the motion, subject to review of a declaration of counsel and supporting documentation of fees and costs incurred.  On March 12, 2018, Kakazu filed a request for attorney's fees and costs, and supporting declaration of counsel, pursuant to the District Court's instructions.  On April 5, 2018, the District Court entered the Order Granting Fees.

29

It is not clear from the record, but it appears that the District Court awarded Kakazu fees and costs in defending against the Rule 60(b) Motion as a sanction against Christopher. The Motion for Sanctions was made pursuant to DCRCP Rule 11, and no other authority for awarding fees and costs was discussed during the March 7, 2018 hearing. The Order Denying Rule 60(b) Motion states in relevant part: "Pursuant to her Motion to Strike and for Sanctions, etc. filed January 16, 2018 and [HRS] § 604-10.5(h),[16] . . . Kakazu is awarded her attorney's fees and costs incurred in defending against [Christopher's Rule 60(b) Motion] . . . ." (Footnote added.) However, neither the Motion for Sanctions nor Kakazu's subsequent request for attorneys' fees and costs mentioned HRS § 604-10.5(h), and it was not raised at the March 7, 2018 hearing. The Order Granting Fees does not specify the authority under which fees and costs were granted.

To the extent that the Order Granting Fees was intended to impose a sanction pursuant to DCRCP Rule 11 (see supra note 13), case law interpreting HRCP Rule 11 guides our analysis. Deutsche Bank Nat'l Tr. Co. v. Greenspon, 143 Hawai'i 237, 244, 428 P.3d 749, 756 (2018). "The determination of whether [DCRCP Rule 11] requirements have been met is fact intensive, requiring specific findings regarding the nature of the potentially sanctionable conduct and surrounding circumstances." Id. at 244, 428 P.3d at 756 (citing In re Hawaiian Flour Mills, Inc., 76 Hawai'i 1, 15, 868 P.2d 419, 433 (1994), and Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawai'i 452, 459, 903 P.2d 1273, 1280 (1995)). Similarly:

> It is well established . . . that orders imposing sanctions should "set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority." [Bank of Hawaii v. Kunimoto, 91 Hawai'i 372, 390, 984 P.2d 1198, 1216 (1999)]; see also Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 257, 948 P.2d 1055, 1098 (1997); Enos[,] 79 Hawai'i [at] 459, 903 P.2d [at] 1280 []; Kaina v. Gellman, 119 Hawai'i 324, 331, 197 P.3d 776, 783 (App. 2008) (stating that a sanctioning order "must inform the party of the authority pursuant to which he or she is to be sanctioned"). The requirement that a court

---

[16] HRS § 604-10.5(h) states: "The court may grant the prevailing party in an action brought under this section costs and fees, including attorney's fees."

> should make findings that state the perceived misconduct
> with reasonable specificity when sanctions are imposed has
> been applied in multiple situations, such as sanctions for
> discovery violations, filing a complaint, and delay in
> withdrawing a motion. Fujimoto v. Au, 95 Hawaiʻi 116, 153,
> 19 P.3d 699, 736 (2001) (failure to review court rule before
> filing the complaint); Kawamata Farms, 86 Hawaiʻi at 256,
> 948 P.2d at 1097 (discovery fraud); Enos, 79 Hawaiʻi at 460,
> 903 P.2d at 1281 (undue delay in withdrawing motion).

Trustees of Estate of Bishop v. Au, 146 Hawaiʻi 272, 282-83, 463
P.3d 929, 939-40 (2020); see Erum v. Llego, 147 Hawaiʻi 368, 389,
465 P.3d 815, 836 (2020).

The supreme court has further explained that the making
of findings regarding the purported misconduct "serves multiple
important purposes":

> First, it clearly identifies and explains to the sanctioned
> person the conduct underlying the sanction. Additionally,
> findings that describe with reasonable particularity the
> perceived misconduct facilitate a meaningful and more
> efficient appellate review. Kunimoto, 91 Hawaiʻi at 390,
> 984 P.2d at 1216. Specifying the sanctioning authority,
> including the court's inherent authority if applicable, is
> also necessary for meaningful appellate review. Kaina, 119
> Hawaiʻi at 331, 197 P.3d at 783. Finally, the findings
> assure both the litigants and the court that the decision to
> impose sanctions was the result of reasoned consideration.
> See Enos, 79 Hawaiʻi at 459, 903 P.2d at 1280 (stating that
> specific findings assure litigants and the judge that the
> decision was the product of thoughtful deliberation).

Trustees of Estate of Bishop, 146 Hawaiʻi at 283, 463 P.3d 929,
940.

Here, the Order Granting Fees was deficient because it
failed to specify the authority supporting an award of attorney's
fees and costs to Kakazu in defending against the Rule 60(b)
Motion. Moreover, to the extent that the Order Granting Fees was
intended to impose a sanction against Christopher, the order
failed to set forth findings that describe, with reasonable
specificity, the perceived misconduct by Christopher, as well as
the appropriate sanctioning authority. Accordingly, we conclude
that the District Court's award of $2,040.49 in attorney's fees
and costs against Christopher must be vacated and remanded to the
District Court for: (1) specification of the authority
supporting the award of attorney's fees and costs to Kakazu in
defending against the Rule 60(b) Motion; and (2) if the award of
attorney's fees and costs imposes a sanction against Christopher,

findings that describe, with reasonable specificity, the perceived misconduct by Christopher, as well as the appropriate sanctioning authority.

## H. Motion to Compel

**CAAP-18-0000306, POE 5**: Christopher contends that the District Court erred in denying Christopher's post-judgment Motion to Compel.

The District Court appears to have stamped the Motion to Compel indicating it was "Denied," signed the denial, dated it November 2, 2017, and then filed the denied Motion to Compel on the same date. Thus, the Order Denying Motion to Compel was entered on November 2, 2017. Pursuant to HRS § 641-1(a), this post-judgment order (see supra note 3) was an appealable final order. See McCurdy, 103 Hawaiʻi at 157, 80 P.3d at 978. However, Christopher did not file his April 5, 2018 notice of appeal in appellate case no. CAAP-18-0000306 within 30 days after entry of the Order Denying Motion to Compel. The failure to file a timely notice of appeal in a civil matter is a jurisdictional defect that the parties cannot waive and the appellate courts cannot disregard in the exercise of judicial discretion. Bacon v. Karlin, 68 Haw. 648, 650, 727 P.2d 1127, 1128 (1986); HRAP Rule 26(b). Accordingly, this court lacks jurisdiction to review the Order Denying Motion to Compel and, thus, POE 5 in appellate case no. CAAP-18-0000306.

## I. Conclusion

For the reasons discussed above:

In appellate case no. CAAP-17-0000634, we affirm: (1) the June 7, 2017 Order Granting Petition for Injunction Against Harassment; (2) the August 2, 2017 Findings of Fact and Conclusions of Law, as amended to correct clerical errors pursuant to the August 9, 2017 order; and (3) the August 3, 2017 "Order Denying Respondent's Motions for Reconsideration, etc. Dated June 14, 2017 and Additional Motion for Reconsideration Filed June 19, 2017."

In appellate case no. CAAP-18-0000306, we vacate: (1) that portion of the April 5, 2018 "Order Denying Respondent's Motion to Set Aside, and/or Modify, and/or Modify [sic], and/or Vacate Orders, and/or For New Trial, and Other Relief Filed January 4, 2018" that awards Kakazu her attorney's fees and costs "incurred in defending against Respondent's Motion to Set Aside, etc."; and (2) the April 5, 2018 "Order Granting Petitioner Yuko Kakazu's Request for Attorney's Fees and Costs." We remand to the District Court for: (a) specification of the authority supporting the award of attorney's fees and costs to Kakazu; and (b) if the award of attorney's fees and costs imposes a sanction against Christopher, findings that describe, with reasonable specificity, the perceived misconduct by Christopher, as well as the appropriate sanctioning authority. We affirm in all other respects the April 5, 2018 "Order Denying Respondent's Motion to Set Aside, and/or Modify, and/or Modify [sic], and/or Vacate Orders, and/or For New Trial, and Other Relief Filed January 4, 2018."

DATED: Honolulu, Hawaiʻi, February 28, 2022.

On the briefs:

Peter Christopher,
Self-represented Respondent-
Appellant.

Yuko Kakazu,
Self-represented Petitioner-
Appellee.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge